Robert R. ROWE et al., Plaintiffs,

v.

Ralph Roderick SHEHYN, Defendant.

Civ. A. No. 3102–57.

United States District Court
District of Columbia.

March 27, 1961.

J. Hampton Baumgartner, Jr., Washington, D. C., for plaintiffs.

James C. Toomey, Washington, D. C., for defendant.

McLAUGHLIN, District Judge.

This is an action for debt due and owing. The Plaintiffs are Mr. and Mrs. Robert R. Rowe, suing in their own right, and the executor of Mrs. Dorothy G. Rowe. The Rowes were the owners of a parcel of real estate known as 1610 New Hampshire Avenue, in Washington, D. C. In 1957 they decided to sell the premises and on May 6, 1957, they entered into an option agreement with the Defendant. The option, which by a series of renewals was made to run until October 20, 1957, provided that the Defendant might purchase the property for a consideration of $60,000. The option then went on to state further:

"After notice in writing to sellers of his intention to exercise this option, and the payment of Five Thousand Dollars ($5,000.00) by the purchaser as deposit (which said deposit shall become part of the purchase price) and the execution by the parties of the attached form of sales contract, the purchaser agrees within thirty (30) days, or as soon thereafter as a report on the title can be secured, to make full settlement in accordance with the terms hereof."

On October 19, 1957, before the above-described option was to expire, the Rowes and the Defendant filled out and signed the form of sales contract provided for in the option agreement. (A photostatic copy of the executed sales contract was introduced at the trial as Plaintiff's Exhibit 2.) The contract recited the receipt by Plaintiffs from the Defendant of the sum of $5,000, and provided that the price of the property was to be $60,000, of which $36,000 was to be in cash and $24,000 in the form of a first trust.

The contract provided for the possibility of breach in these terms:

"Within thirty (30) days from the date of acceptance hereof by the owners * * * the seller and purchaser are required and agree to make full settlement in accordance with the terms hereof. If the purchaser shall fail to do so, the deposit herein provided for may be forfeited at the option of the seller, or without forfeiting the said deposit the seller may avail himself of any legal or equitable rights which he may have under this contract."

Lastly, the contract provides that it is an integrated instrument:

"This contract * * * when ratified by the seller contains the final and entire agreement between the parties hereto and they shall not be bound by any terms, conditions, statements or representations, oral or written, not herein contained."

After executing this document Mr. Rowe and Mr. Shehyn placed all of the executed copies in an envelope and deposited it in the mail, addressed to one of the executives of a title insurance company. Although the contract recited the receipt by the sellers of $5,000 as a down payment neither at this time nor at any time thereafter did the Defendant transfer to the Plaintiffs any such sum.

Sometime subsequent to October 19, 1957, the Defendant broke off negotiations concerning the property and final settlement was never had between the parties. Ultimately the Plaintiffs sold the property to another purchaser for a sum in excess of $60,000. It is for the $5,000, mentioned in the sales contract as a down payment but never in fact paid that they sue in this action.

Plaintiffs base their action on the sales contract, Plaintiffs' Exhibit 2, contending that it constitutes a legally enforceable promise to pay the $5,000 deposit, which deposit should be forfeited after Defendant's failure to complete the contemplated agreement. Defendant denied that there was any debt created by the signing of Plaintiffs' Exhibit 2, or that it was in fact an enforceable, executed contract at all. He argues that the portion of the option agreement quoted above creates three conditions precedent to the exercise of the option, namely, notice in writing by the purchaser of his intent to exercise the option, the execution of the form of sales contract specified and the payment of $5,000 as a down payment. He concedes that his action in signing the form of sales contract in effect constituted notice of intent to exercise the option and was in strict and literal compliance with the second of the conditions above. But, he asserts, the third condition remained unfulfilled. It is his contention that the parties in signing the sales contract contemplated that it be the last renewal of the option on the property and that if Defendant did not pay the $5,000 within a specified time the option was to lapse and the parties be returned to their original position; that in any event the payment of the $5,000, a necessary condition to the creation of a valid contract, was never accomplished and that as a result of this there was never any executed contract of sale on which to base liability. He testified that no money was ever transferred from him to Plaintiffs, and denied that he ever led Plaintiffs to believe that within a few days he would have on deposit at the title company sufficient funds to cover such a deposit.

Defendant seeks to avail himself of the well recognized rule of law providing that where parties have created conditions precedent to a contract's coming into being, the law requires that these conditions be strictly and literally complied with before a contract comes into existence. Here, he argues, there was never any compliance with one of the essential conditions precedent set out in the option agreement for its exercise, and therefore there is no enforceable, executed contract of sale on which Plaintiffs can base their suit. Further, Defendant asserts that even though Plaintiffs' Exhibit 2 recites that it is a contract of sale he is not bound by its terms, since it is a contract predicated on a condition precedent and parol evidence is admis-

sible to show that such a condition has not been complied with.

■■ It is true that ordinarily conditions precedent to a contract must be strictly and literally fulfilled and that one of the exceptions to the Parol Evidence Rule permits the introduction of outside evidence to show the existence of an unfulfilled condition precedent to liability. See 32 C.J.S. Evidence § 935 and cases therein cited. But there is an important exception to this general statement. Where the written instrument contains a recitation that it embodies the entire agreement between the parties and that they shall not be bound by any representations, agreements or conditions not therein contained, then parol evidence is inadmissible to show the existence of an unfulfilled condition precedent not set forth in the instrument. Edward T. Kelly Co. v. Von Zakobiel, 168 Wis. 579, 171 N.W. 75; Automobile Battery Co. v. Geraghty & Co., 30 Ga.App. 446, 118 S.E. 412; Fadex Foreign Trading Corp. v. Crown Steel Corp., 272 App.Div. 273, 70 N.Y.S.2d 892, affirmed 297 N.Y. 903, 79 N.E.2d 739. The logic of the distinction is that to show a condition precedent not inconsistent with the writing is not to vary or contradict the terms of the writing, but to show such a condition where the instrument recites that there are none is a contradiction. Edward T. Kelly Co. v. Von Zakobiel, supra. In the case at bar the contract of sale specifically provides, in the language set out above, that it embodies the final agreement between the parties, and that they are not bound by any conditions not herein contained. It is thus the Court's view, in light of the authorities cited, that the signing of Plaintiffs' Exhibit 2 created a valid, enforceable contract for the sale of the premises, in spite of the fact that the deposit was never paid. To hold otherwise would be to allow the use of parol evidence to contradict the specific language of the written instrument.

■ Having determined that the contract in question is a binding obligation, the Court must next consider the question of what if any damages Plaintiffs are entitled to recover. While it is true, as Defendant points out, that in general the law looks with disfavor on forfeitures, yet there seems to be no doubt that in the District of Columbia real estate forfeitures, treated as liquidated damages, will be enforced in the proper circumstances. Barnette v. Sayers, 53 App. D.C. 167, 169, 289 F. 567. But one important qualification was pointed out in the case of Sheffield, et al. v. Paul T. Stone, Inc., 68 App.D.C. 378, 98 F.2d 250, 252. In that case the purchaser was suing the seller for the return of a deposit paid pursuant to a real estate sales contract. Subsequent to the signing of the contract the purchaser had refused to complete the transaction. The seller resold the property and refused to return purchaser's deposit. In that case the Court had before it a contract provision concerning forfeiture of deposit identical to the one in the instant case (which provision is set out, supra). The Court construed the language to mean that the seller, upon purchaser's default had, in addition to specific performance, two alternative courses open to him; that he might declare the deposit forfeit and thereby relieve the purchaser of any further liability, or he might avail himself of any legal or equitable rights which he might have under the contract and that these alternative choices are mutually exclusive, in that if the seller elects to proceed in one fashion he can not thereafter avail himself of the other remedy. In the Sheffield case the Court held that when the seller resold the property to another purchaser he availed himself of his "legal or equitable rights" under the contract. He was not thereafter at liberty to retain the deposit as liquidated damages, since by selling the property he had fixed his actual damages, or lack of them. In such a situation the only purpose for which the deposit might be retained would be as a set-off for the actual damages sustained if the subsequent resale were at a price lower than the contract price. But, in Sheffield the Court found that the resale was at a price higher than the contract price and there was no actual

damages. Thus the seller was entitled to no part of the deposit.

 The Court has set out at length the holding and reasoning of the Sheffield case because, in the Court's view that case controls the issue here for determination. In the instant case the deposit called for was never paid into the hands of the Plaintiffs. Thus they can not be said to have been in a position to forfeit the deposit. In Sheffield the Court of Appeals defines the term "'forfeit' the deposit" to mean "keep it as liquidated damages and call the contract off." 98 F.2d at page 252. Since as previously stated the $5,000 mentioned in the contract in this case as a deposit never came into the possession of the Plaintiffs, obviously Plaintiffs could not "keep" said sum as a "forfeit" within the meaning of the term "forfeit" in Sheffield. Nor is the Court persuaded from a consideration of all of the testimony that $5,000, or indeed any sum, was ever deposited with the title company by Defendant to the credit of Plaintiffs. On this issue contradictory testimony was presented by the Plaintiffs and Defendant respectively. However, the issue is resolved by the testimony of the witness Maki, representing the title company. He stated that no such arrangement was agreed to by the title company. It is clearly necessary for a valid escrow agreement that the proposed escrow agent know of and agree to perform such function. Home Ins. Co. of New York v. Wilson, 210 Ky. 237, 275 S.W. 691; Cloud v. Winn, Okl., 303 P.2d 305. What the Plaintiffs did was to exercise their alternative remedy under the contract, i. e. to sell the property to a third party. Having done so they are precluded from seeking to forfeit the deposit. "If the seller 'avail himself of any legal or equitable rights which he may have under this contract' * * * he cannot thereafter 'forfeit' the deposit". 98 F.2d at page 252. Nor are Plaintiffs in any position to claim any part of the recited deposit as actual damages, since it is not disputed that they realize from the subsequent sale of the property a sum greater than the $60,000 set as the price in the contract with Defendant.

Therefore, in the circumstances established by the record in this case and in consonance with the rule announced in Sheffield, supra, it is the holding of this Court that Plaintiffs have not shown themselves entitled to either liquidated or actual damages and that judgment be entered in favor of Defendant.

This opinion will constitute Findings of Fact and Conclusions of Law by the Court, and counsel for Defendant will prepare an order in conformity with it.