**Richard D. ALLEN, Plaintiff-Appellant,**

v.

**James E. FOSTER,
Defendant-Respondent.**

No. 12804.

Missouri Court of Appeals,
Southern District,
Division Two.

April 5, 1984.

Jay P. Cummings, Springfield, for plaintiff-appellant.

Jerry L. Reynolds, Bonacker & Reynolds, Springfield, for defendant-respondent.

HOGAN, Judge.

This is an action to recover part of the purchase money paid on a contract to buy and sell realty. The case arose out of a business deal gone sour and in consequence the record is replete with equivocation and contradiction. The issues tendered were vigorously and hotly contested. Our sketch of the background facts is limited to that recital essential to an orderly disposition of the appeal and does not purport to state all possible inferences and deductions which might be drawn from the record.

In November 1979, defendant James Foster earned his livelihood by constructing and selling houses. About November 4, he had a house ready for sale. Plaintiff Richard Allen was employed by a telephone company. His employment required him to spend much of his working week traveling. On weekends, plaintiff was at home with a paramour.

For whatever reason, plaintiff decided to purchase a new house for himself and his companion. The parties first discussed the sale on November 4, 1979. Plaintiff offered defendant the sum of $85,000 and the defendant accepted. Plaintiff hesitated to come forward with payment of the $8,500 earnest money required, but he finally gave defendant a check for that amount, which defendant cashed. The contract in issue, which is before us as Exhibit 1, was finally completed on November 10, 1979.

The contract provides for the sale and purchase of a parcel of realty known and numbered as 1840 East Vincent, Springfield; recites the receipt of $8,500 by the defendant as part of the purchase price and calls for payment of the balance "at closing." The instrument is signed by the parties, plaintiff as purchaser and defendant as vendor. The contract further recites, following statement of the purchase price, that the balance shall be paid "[a]t closing. Closing on or before Dec. 10th, 1979." The defendant is required to tender evidence of title and the nonexistence of liens and taxes up to December 10. It is a fair construction of the instrument that the parties looked to completion of the transaction—a "closing"—by December 10, 1979. The contract makes no provision for liquidated damages upon the purchaser's default. The common provision for retention of the earnest money as liquidated damages upon the purchaser's default was crossed out with a typewriter.

Immediately after the contract was signed, plaintiff and his paramour had a disagreement. Allen's companion decided that if she was going to live with him on a permanent basis, the two should be married. Allen was not interested, and his paramour made some gestures—such as partially packing a suitcase—indicating she was leaving.

Greatly distressed, Allen went to the defendant's home. According to Allen, the defendant agreed to rescind the contract. Allen gave Foster Allen's "copy" of the contract and Foster gave plaintiff a check in the amount of $8,500. Allen attempted to purchase a certificate of deposit with defendant's check but defendant had stopped payment.

The defendant's evidence, inter much alia, was that plaintiff had reaffirmed the contract after November 11. Foster testified that Allen had agreed to go ahead with the purchase upon condition that he could obtain a loan sufficient to cover the purchase price at 11.4 percent interest. Defendant admitted stopping payment on the check, but stated he had done so because he believed Allen had misrepresented the fact that his paramour was leaving. Defendant stated Allen had admitted as much. Allen further stated that he could not obtain a loan upon the terms he had thought possible when he signed the contract. Allen and Foster went to see a loan officer at a local savings and loan association, but Allen refused to apply for a loan. Defendant waited to do anything further until March 1980. At that time, defendant sold his own home and moved into the house at 1840 Vincent. The only definite figure which defendant produced concerning his damages between December 10, 1979, and March 1, 1980, when he sold his home was the "actual cost" of moving into the house at 1840 Vincent, $3,700, "approximately." In August 1981, defendant sold the property at 1840 Vincent for $105,000.

This action was commenced in June in the Circuit Court of Greene County. The pleadings were finally settled on October 2. In his first count, plaintiff pleaded rescission and prayed return of the partial payment of $8,500. Defendant by answer denied rescission of the contract, averring among otherthings that any agreement to rescind was obtained by misrepresentation. As an affirmative counterclaim, defendant averred breach of the contract, pleaded special damages only in the amount of $8,500 and prayed judgment in that amount.

Upon trial, plaintiff submitted rescission by consent by his Instruction No. 7; the hypothesis of the instruction was that return of the contract by Allen to Foster and Foster's tender of the check at that time constituted a voluntary rescission. This finding was conditioned upon the jury's disbelief that the rescission was obtained by misrepresentation. Defendant's verdict-director submitted breach of the contract in the language of MAI 26.02, and defendant's damages were submitted by a modified form of MAI 4.01. The jury returned a verdict for plaintiff in the amount of $6,400 on his claim for damages and for defendant on his counterclaim in the amount of $2,100. The total amount, quite obviously, is $8,500.

■ The plaintiff has made but a sole point on appeal. Essentially, as stated, plaintiff's point is that the jury did not return the verdict it intended to return. In support of his argument, plaintiff tenders an affidavit of a juror to the effect that the jury did not understand the effect of their verdict; what they intended was that plaintiff have judgment for $6,400 of the amount in defendant's possession, and that defendant retain $2,100. We cordially agree with defendant that the affidavit is inadmissible for the purpose of showing that the jury's verdict did not represent what the jury intended to do. *Baumle v. Smith*, 420 S.W.2d 341, 348[17] (Mo.1967).

However, the obtuse statement of plaintiff's single point presented does not prevent our addressing the single and obvious meritorious question tendered. It became apparent during argument and obvious upon reading the record that the sole question on appeal is whether the jury properly took the earnest money into account in calculating the amounts due the defendant. Defendant's counsel has recognized this miscalculation and has countered with the argument that if the jury miscalculated, any error was self-invited because plaintiff's instructions intended to require the jury to take the partial or earnest money payment into account were confusing and misleading.

The fact remains that the defendant has and retains the $8,500 originally paid to him by the plaintiff. Defendant was asked about the plaintiff's check on direct examination; as follows: "Q. Thereafter, did you ever do anything with that check or the deposit? A. No, sir. Q. Is it still there? A. Yes, sir. Q. *The—that mon-*

*ey is more or less being held in escrow, is it not? A. Yes."* (Our emphasis.) So, in fact and in substance, defendant has $8,500 and in addition, a verdict and judgment for $2,100.

The defendant's measure of damages for breach of the contract was the difference between the contract price and the value of the land on the day the contract should have been completed, December 10. *Duncan v. Townsend,* 325 S.W.2d 67, 70[3] (Mo.App.1959). A plaintiff may also recover special damages for breach of a real estate contract if those special damages have been pleaded and made known to the person who breaches the contract. Id., 325 S.W.2d at 70. In this case the defendant pleaded and proved only special damages and prayed recovery of $8,500. He retains $8,500 excluded from the contract as liquidated damages and has judgment for $2,100. To reiterate, defendant has recovered an amount in excess of the amount claimed.

It is true enough that plaintiff's Instructions 9 and 10, particularly the second paragraph of Instruction No. 10, is somewhat misleading and may have influenced the jury in its calculation of the amount due. The trial court refused remittitur on the ground that plaintiff had invited the error. It is now recognized that it is a function of the court to reduce the amount recovered if there has been an advance payment which should be credited to a claim or counterclaim. See MAI 1.06 and Committee's Comment. Of course, MAI 1.06 in its present form was not in effect when this case was tried but it has always been recognized that the "invited error" rule should be applied with discretion and should not be given countenance so as to create a windfall for the party invoking the rule. *McGrew v. Thompson,* 353 Mo. 856, 864, 184 S.W.2d 994, 998–999[14, 15] (1945).

Without restating the evidence in detail, we consider it possible for the jury to have found either a rescission or a breach of the contract. It did not find a rescission as hypothesized by the plaintiff. If it had, it would have found for plaintiff in the amount of $8,500, as directed by Instruction No. 7 and the first paragraph of Instruction No. 10. Instead, the jury found a breach of the contract but failed to take the partial payment into account. The defendant's recovery is accordingly excessive, but the error may be cured by remittitur. *Biggers v. Gonter,* 54 S.W.2d 783, 786–787[5–8] (Mo.App.1932); see also *Trustees of Christian University v. Hoffman,* 95 Mo.App. 488, 500, 69 S.W. 474, 477 (1902). However, we are not empowered to enter judgment for the plaintiff in the amount of $6,400 and further order that defendant take nothing on his counterclaim. We are not authorized to correct or amend a verdict in matters of substance. *Thorne v. Thorne,* 350 S.W.2d 754, 757 (Mo.1961). Having considered the whole record, we conclude that an order of remittitur should not be conditioned upon a partial new trial.

Accordingly, it is ordered that if, within 15 days, the defendant shall tender a remittitur in the amount of $2,100 with the clerk of this court, the judgment shall in all other respects stand affirmed; otherwise, the judgment shall be reversed and remanded generally with directions to enter an order for new trial on all issues.

MAUS, P.J., and PREWITT, J., concur.