Gary R. CONWAY and Joyce Conway,
his wife, Plaintiffs-Respondents,

v.

Earl B. JUDD and Melba K. Judd, his
wife, Defendants-Appellants.

No. 14664.

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 30, 1987.

Lawrence N. Koeln, Centerville, for defendants-appellants.

David R. Orzel, Farmington, for plaintiffs-respondents.

PER CURIAM.

Plaintiffs Gary Conway and Joyce Conway, husband and wife, brought this action for breach of contract against defendants Earl Judd and Melba Judd, husband and wife. The dispute arises out of dealings between the parties concerning an improved lot in Bunker, Missouri, which plaintiffs owned and which defendants allegedly agreed to buy for the price of $15,000. The trial court, sitting without a jury, found the issues generally in favor of the plaintiffs and awarded plaintiffs judgment in the amount of $5,827.72 against both defendants. Defendants appeal.

On this appeal this court must, and does, confine its review to the "points relied on."

Rule 84.04(d).[1] *Kurtz v. Fischer*, 600 S.W.2d 642, 645[1] (Mo.App.1980). "The questions for decision on appeal are those stated in the points relied on, and a question not there presented will be considered abandoned on appeal and no longer an issue in the case." *Pruellage v. De Seaton Corporation*, 380 S.W.2d 403, 405[3] (Mo. 1964). See also *Smith v. Welch*, 611 S.W.2d 398, 399[1] (Mo.App.1981). Matters which could have been raised, but were not, are neither mentioned nor considered. This opinion should be so viewed.

In general, defendants' three points assert, respectively: (1) plaintiffs' action is barred by § 432.010, the Statute of Frauds; (2) plaintiffs failed to make a submissible case against defendant Melba Judd; and (3) the judgment is excessive.

The petition sought damages in the sum of $7,500 plus interest for "defendants' breach of their agreement with plaintiffs." Plaintiff Gary Conway was the sole witness for the plaintiffs and defendant Earl Judd was the sole witness for the defendants.

Gary Conway testified that he and his wife owned a house and lot in Bunker. On September 27, 1982, Conway had a conversation with Earl Judd concerning the sale of the property. Only the two men were present. The property was subject to a deed of trust held by "Capital Savings and Loan at Rolla." The two men agreed on a price of $15,000. Judd gave Conway a check for $3,000, drawn on a checking account held jointly by Judd and his wife, "to hold the house until [Conway] could get the abstract and deed all brought up to date."

On October 2, 1982, Conway met Judd at a bank in Bunker, at which time Conway delivered to Judd a warranty deed executed by Conway and his wife as grantors in favor of Judd and his wife as grantees. Conway said, "Mrs. Judd was there, too, and I delivered the deed to both of them." Conway also gave Judd a set of keys to the property and the abstract which had been certified to date. Judd gave Conway a check for $12,000 also drawn on the Judd joint account. That check bore the inscription, "balance paid on the house."

Conway said that between 5:00 p.m. and 6:00 p.m. on October 2, "Judd called me and told me that he had stopped payment on both checks and that they no longer desired the property." Conway further testified that on October 4, 1982, the deed, the abstract, and the keys were "delivered back to me."

The unpaid balance on the note, with an interest rate of 8 percent per annum, held by Capital Savings was $11,524.63 and plaintiffs, on September 29, 1982, paid that balance and the deed of trust was released. Plaintiffs deposited Judd's $3,000 and $12,000 checks in the Bunker bank and it made a loan to the Conways of $16,505.60, evidenced by a note in that amount with an interest rate of 17 percent per annum, the principal of which was due in six months. Conway used the loan proceeds to pay the $11,524.63 balance on the note held by Capital Savings and to pay the balance of another note held by the Bunker bank representing another loan to the Conways.

On March 28, 1983, the Conways, as grantors, executed and delivered a deed, describing the property, to Lee Parker and wife as grantees. The Parkers paid the Conways $16,000 as the purchase price. Conway testified that before making the sale to the Parkers, some improvements were made on the house at a cost of "$500, $600 or $700." Conway also said that certain expenses were incurred in connection with the Conway-Parker sale, including abstracting, appraisal, title opinion, insurance expense for the period of time between the first and second sale, and attorneys' fees.

Defendant Earl Judd testified that he and his wife, defendant Melba Judd, together with Judd's parents and plaintiffs Conway, looked at the house and asked Conway, "what he wanted for it and what

---

1. All references to rules are to Missouri Rules of Court, V.A.M.R., and all references to statutes are to RSMo 1986, V.A.M.S.

went with the house." Judd said Conway replied, "$15,000 goes for the house, the wood stove in the basement, the gas tank and the contents that was in the gas tank." Judd said, "I told [Conway] I would think about it, me and Melba would think about it and we would let him know on it.... At a later date [apparently September 27, 1982] I agreed with Conway to buy that house."

Judd admitted that he gave the $3,000 check and the $12,000 check to Conway and that Conway gave him the abstract, the keys and the deed. According to Judd, Mrs. Judd was not present when that was done on October 2.

Judd took the deed and abstract to his father's farm and discussed the abstract with his father. "Not over 30 minutes later," according to Judd, he went to the gas station, apparently operated by the Conways. Conway and his wife were there. Judd told Conway he was not satisfied with the contents of the abstract because "it does not state that all liens and taxes were paid." According to Judd, Conway said he would have the abstract corrected. Judd told Conway, "I would like to have my check [sic] back." Conway told Judd he had already deposited the "check." Judd said, "I'll stop payment on it" and Conway said, according to Judd, "Fine." Judd gave Conway the keys.

■ Defendants' first point is that the trial court erred in finding that the alleged oral contract was removed from the operation of the statute of frauds "by invoking the doctrine of part performance" for the reason that the alleged oral contract "was not clear, explicit and definite, in that the evidence showed the parties had not agreed to the terms of the contract, particularly with regard to the LP gas." For several reasons this point has no merit.

Although the trial court, in its judgment, made certain findings, neither side had invoked Rule 73.01(a)(2), by requesting, before final submission of the case, that the court issue "a brief opinion containing a statement of the grounds for its decision and the method of determining any damages awarded."

The trial court's voluntary findings make no mention of the statute of frauds, nor does the judgment state that the statute of frauds was inoperative because of the "doctrine of part performance." On the contrary, the trial court found that the plaintiffs *"fully* performed all terms and conditions of the oral agreement" at the time they delivered to the defendants the warranty deed, the abstract and the keys and received the $12,000 check. Defendants make no claim that plaintiffs' title was defective.

"[T]he statute of frauds has no application where there has been a full and complete performance of the contract by one of the contracting parties, and the party so performing may sue on the contract in a court of law...." *Trimmer v. Short,* 492 S.W.2d 179, 183[1] (Mo.App.1973); to similar effect see *Wills v. Alcorn,* 636 S.W.2d 142, 146[6] (Mo.App.1982); *Justus v. Webb,* 634 S.W.2d 567, 569[5] (Mo.App.1982).

Defendants' brief says:

"Plaintiff testified that he wanted the defendants to pay for the LP gas that was in the tank in addition to the $15,000.00 for the real estate, where defendant's testimony was that the LP gas in the tank was included in the agreed upon purchase price. Therefore, since there was a disagreement between the parties as to the terms of the oral agreement, the alleged contract was not clear, explicit and definite."

The fact that the defendants did not agree with the testimony of plaintiff Conway concerning the LP gas did not prevent the trial court from accepting plaintiffs' version, as it obviously did. If mere disagreement, at trial, between the parties as to the contents of an oral agreement made the agreement "not clear, explicit and definite," as defendants argue, any defendant could defeat an action for breach of contract by simply contradicting the testimony of the plaintiff with regard to its terms. That is not the law. Defendants' first point has no merit.

Defendants' second point is that the trial court erred in entering judgment against defendant Melba Judd because "the evidence clearly showed she had nothing to do with the transaction in that she repudiated the acceptance of the warranty deed by her husband."

Defendants' brief states "[Mrs. Judd] was not present on October 2, 1982, at the time her husband wrote the check for $12,000 and accepted the deed from the plaintiffs." That statement ignores evidence offered by the plaintiffs with regard to the participation of Mrs. Judd in the transactions.

Defendant Judd himself testified that his wife accompanied him when he, together with his parents and the Conways, "went over to look at the house." The record supports the inference that the inspection took place before the September 27, 1982 conversation between the two men. Plaintiff Gary Conway testified that on October 2, at the meeting at the bank when Judd gave him the $12,000 final payment, "Mrs. Judd was present." Conway also testified, without objection, that the deed "was delivered to Mr. and Mrs. Judd" at that time. Conway also testified, without objection, that the sale price was $15,000 "on the sale that I negotiated with Mr. and Mrs. Judd." Defendant Judd admitted that the $3,000 check and the $12,000 check, given by him to the Conways, were drawn on the joint account of Mr. and Mrs. Judd and that the warranty deed, at Judd's request, had named Judd and his wife as grantees.

"The agency of a husband for his wife may be shown by direct evidence or by facts and circumstances which will authorize a reasonable and logical inference that he was empowered to act for her or that she ratified his unauthorized acts." *Ethridge v. Perryman*, 363 S.W.2d 696, 701[6] (Mo.1963). See also *Bayne v. Jenkins*, 593 S.W.2d 519, 534 (Mo.banc 1980); *Murphy v. Olds*, 508 S.W.2d 249, 253[8] (Mo.App. 1974).

The trial court expressly found that "plaintiffs and defendants entered into an oral contract for the conveyance of [the property]." That finding is supported by the evidence. Defendants' second point has no merit.

Defendants' third point is that the amount awarded by the trial court was excessive "in that it included damages not sustained by the plaintiffs." The judgment contains the following itemization of damages:

| | |
|---|---|
| 1. Abstract expense on resale to Parkers | 87.50 |
| 2. Title opinion on resale to Parkers | 75.00 |
| 3. Appraisal on resale to Parkers | 75.00 |
| 4. Additional insurance premiums on house pending resale to Parkers | 135.80 |
| 5. Additional interest (based on the difference in the interest rates in the Capital Savings-Conway loan and the Bank of Bunker-Conway loan) | 1,217.76 |
| 6. Improvements on house (after defendants' breach and prior to sale to Parkers) | 1,000.00 |
| 7. Attorney's fee | 200.00 |
| 8. Lost profit on Conway-Judd transaction | 3,387.46 |
| | 6,178.52 [2] |

Defendants make no challenge to items 1, 2, 3 and 4 so they will be permitted to stand. With respect to item 5, defendants say, without explanation, that it should be $1,211.84 instead of $1,217.76. Defendants, in other words, challenge only $5.92 of item 5, but, since they advance no justification for that challenge, item 5 will be permitted to stand.

Defendants challenge item 6 and properly point out that Conway's testimony was that the improvements cost "$500, $600 or $700." This court reduces item 6 to $500.

Defendants challenge item 7, the attorney's fee. Plaintiffs offered no evidence with regard to the name of the attorney, the type of services rendered, the date of their rendition, or their value. In general, in this type of action, attorneys' fees are not a proper element of damage. *Duncan*

---

**2.** The total of the items listed in the judgment is $6,178.52. The judgment was in the amount of $5,827.72. The record contains no explanation for the discrepancy.

*v. Townsend,* 325 S.W.2d 67, 71[7] (Mo. App.1959). This court eliminates item 7.

The judgment does not recite the manner in which the court arrived at the $3,387.46, the amount of item 8. On October 2, 1982, the date when the full purchase price of $15,000 was due from defendants to the plaintiffs, the property was subject to the deed of trust held by Capital Savings, and the "payoff figure" for that loan on that date was $11,524.63. Plaintiff Gary Conway testified, on direct examination, that the debt to Capital Savings "was approximately $11,500, so I was going to make a $3,500 profit on the [sale to the Judds]."

The foregoing testimony of Gary Conway, describing a "$3,500 profit," was a misstatement of the situation. Since the witness was describing the difference between the sale price and the amount of the lien to which the land was subject, he was actually referring to the value of plaintiffs' equity in the property. It is not clear whether the trial court's allowance of item 8, in an amount close to Conway's estimate of his "profit," indicates the trial court's acceptance of Conway's erroneous terminology.

■ In an action for breach of contract brought by the seller of real estate against the buyer, the general rule is that the seller's measure of damages is the difference between the contract price and the market value of the land on the date the contract "should have been completed," that is the date of breach. *Allen v. Foster,* 668 S.W.2d 277, 280[2] (Mo.App.1984); *Construction Enterprises, Inc. v. Schaeffer,* 562 S.W.2d 799, 800[1] (Mo.App.1978); *Duncan v. Townsend,* 325 S.W.2d 67, 70[3] (Mo.App.1959); *Biggers v. Gonter,* 54 S.W.2d 783, 786[5] (Mo.App.1932). See 92 C.J.S., Vendor & Purchaser, § 537(c), p. 528; 52 A.L.R. 1511 (Measure of damages for purchaser's breach of contract to buy real property.) Additionally, as *Allen,* at p. 280, and *Duncan,* at p. 70, also hold, the seller may also recover special damages "if those special damages have been pleaded and made known to the person who breaches the contract."

In *Leonard v. American Walnut Co., Inc.,* 609 S.W.2d 452, 455[6] (Mo.App.1980), the court said:

"In sales of an interest in realty, there is no obligation on the part of the seller to elect his remedy when the buyer defaults and there is no applicable theory of mitigation of damages. The seller may resell the property or retain it and, in either event, be entitled to recover his loss measured by the difference between the contract price and the market price. Of course, an essential element of the seller's case is proof of market value and if he does resell within a reasonable time after the breach, the price obtained is some evidence of market value."

There is respectable authority to the effect that where the seller, after breach by the buyer, resells the land to a third person and obtains the *full* contract price on resale, he can recover no damages for breach of the contract by the buyer, *Rowe v. Shehyn,* 192 F.Supp. 428, 432[5] (D.C.1961); *Millikan v. Hunter,* 100 N.E. 1041, 1044[8] (Ind.1913); *Monroe v. South,* 64 S.W. 1014 (Tex.1901), except interest for the interval before resale, *Millikan.* See 92 C.J.S., Vendor & Purchaser, § 537(c)(3), p. 531.

■ In the case at bar the particulars of the Conway-Parker resale were introduced into evidence without objection. On the record here the trial court could properly consider that those particulars "threw light" upon the value of the property at the time of the Conway-Judd transaction. *Louis Steinbaum Real Estate Co. v. Maltz,* 247 S.W.2d 652, 656[7] (Mo.1952).

The sale to the Parkers occurred on March 28, 1983, 177 days after October 2, 1982, the date the Conway-Judd transaction should have been completed. The record indicates that the only change in the property consisted of the improvements made by the plaintiffs at a cost of $500. Even if, which seems unlikely, those improvements served to increase, by double their cost, the market value of the property, plaintiffs have failed to show that they sustained any loss of profit.

There was no direct evidence as to the market value, as distinguished from the contract price, of the property on October 2, 1982. Unless that market value was below the contract price, plaintiffs sustained no loss of profit. Plaintiffs, however, sustained a delay of 177 days in receiving the purchase price. Interest on $15,000 at the rate of 9 percent per annum, § 408.020, for 177 days amounts to $654.66.

This court, under Rule 84.14, disallows item 8, so far as "lost profit" is concerned, and substitutes, for item 8, $654.66 as loss of interest on the Conway-Judd transaction.

Taking into consideration the action of this court with respect to the items discussed above, this court modifies the trial court's judgment so as to reduce it, as of the date of its rendition, to the sum of $2,745.72. As so modified, the judgment is affirmed.

All concur.