Jack L. ENGEL and Dyann Engel, Plaintiffs–Respondents,

v.

William STONE and Sharon Stone, Defendants–Appellants.

No. 16631.

Missouri Court of Appeals, Southern District, Division Two.

Nov. 8, 1990.

David A. Childers, Lee Ann Miller, Woolsey, Fisher, Whiteaker & McDonald, Springfield, for defendants-appellants.

Joanna V. Billingsley, Ozark, for plaintiffs-respondents.

FLANIGAN, Chief Judge.

Plaintiffs Jack Engel and Dyann Engel, husband and wife, brought this injunction action against defendants William Stone and Sharon Stone, husband and wife, seeking an order restraining defendants "from continuing to park trucks, except ½ ton or less, on the property described as Lot 33 Fremont Hills Subdivision, Christian County, Missouri, or any part thereof."

Plaintiffs are residents of Fremont Hills Subdivision in Christian County. In 1970 plaintiff Jack Engel, the owner of all the land comprising the subdivision, recorded a plat showing the land as it was subdivided. Plaintiffs own several lots in the subdivision. Defendants own and reside on Lot 33. The lots were sold subject to certain restrictions, including the one involved here, which provided, in pertinent part: "No trucks permitted, except ½ ton or less."

After an evidentiary hearing the trial court entered its order that "defendants are and shall be permanently enjoined from parking the Snap-on Tools truck within Fremont Hills Subdivision." Defendants appeal.[1]

Defendants' point is that the trial court's order was not supported by substantial evidence and was against the weight of the evidence for the following reasons: (1) "The meaning of the term 'truck' within the restrictive covenants of the subdivision is unclear and was not defined at trial," and any doubt as to the interpretation of the restrictive covenants should be resolved in favor of defendants; (2) plaintiffs presented no competent evidence that defendants' vehicle was a truck within the

meaning of the restrictive covenants; (3) the term "½ ton" is not defined in the restrictive covenants and if that term means the vehicle's pay load, plaintiffs offered no evidence that the pay load of defendants' vehicle was, or could be, more than ½ ton.[2]

"The questions for decision on appeal are those stated in the points relied on, and a question not there presented will be considered abandoned on appeal and no longer an issue in the case." *Pruellage v. De Seaton Corporation*, 380 S.W.2d 403, 405[3] (Mo.1964). Matters which could have been raised, but were not, are neither mentioned nor considered. *Conway v. Judd*, 723 S.W.2d 905, 906 (Mo.App.1987).

■ Appellate review of this court-tried case is governed by Rule 73.01(c), V.A.M.R. This court must give due regard to the opportunity of the trial court to have judged the credibility of the witnesses. The judgment of the trial court will be sustained unless there is no substantial evidence to support it, or it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32[1] (Mo. banc 1976).

■ In *Brasher v. Grove*, 551 S.W.2d 302, 303 (Mo.App.1977), this court said:

"Restrictive covenants are not favorites of the law. Where their meaning is properly open to construction, they will be strictly construed. They will not be extended by implication and any reasonable doubt as to their meaning will be resolved in favor of free use of the land. If the language of the governing instrument is plain, no construction is necessary. The intention of the parties may be gathered not only from the specific clause under scrutiny but in light of all other provisions. Unless it appears that

---

1. Defendants make no distinction between the legal position of William Stone and that of his wife. Accordingly, this court refrains from determining whether any such distinction would have been appropriate.

2. In another point, defendants claim that there was no evidence to prove that they violated a separate restriction contained in the covenants. Plaintiffs properly point out that the trial court made no finding with respect to a breach of the separate restriction and did not base its order on such breach.

the words of the restriction are intended to be used in a technical or limited sense, the language is to be read and applied according to the plain, everyday or popular meaning of the words. However, the principle that restrictions as to the use of real estate should be strictly construed and doubts resolved in favor of the free use of property should never be applied in such a way as to defeat the plain purpose of the restriction."

Plaintiffs' witnesses were plaintiff Jack Engel, Martin Erwin and Robert Carroll.

Engel testified that the purpose of the restrictions was to "maintain a standard" in the subdivision as a "first class neighborhood." He said the reason for the restriction pertaining to trucks was "the larger the truck, the less desirability of the appearance." Photographs of defendants' vehicle, (hereinafter called "the vehicle"), were introduced.

Engel said that the vehicle was parked in front of defendants' house "possibly every night.... It's there on a fairly regular basis." Engel was familiar with the type of vehicle shown in the photographs because he has owned one. "It is a working vehicle or truck. The one I used to own I used for catering." Engel is a member of the subdivision's "architectural committee" and in that capacity he had received many complaints "about the truck."

Martin Erwin testified that he was employed by Ryder Truck Rental in Springfield. He knew defendant Stone "by buying tools from him." Stone sells hand tools of the Snap-on brand. Stone also sold tools to other persons at Ryder. Stone called on Ryder usually once a week and came in a truck. Photographs of the vehicle were shown to Erwin and he said the photographs showed a vehicle similar to the one Stone drove to Ryder. When Erwin bought tools from Stone, "Stone would go out to his truck and get the tools for me." Erwin had been inside the truck which "had shelves on both sides with tools on it.... I guess you would call that Stone's inventory." On the back of the vehicle was a lift used to lift heavy objects.

Erwin also testified that Ryder "has anything from cars all the way up to heavy duty trucks, cars, vans and pickups.... I know what a ½ ton is. It is a truck large enough it's classified as ½ ton gross weight.... That means light duty. Stone's vehicle is bigger than a ½ ton truck. I would say it's probably like a 1½ ton."

Robert Carroll testified he was a truck mechanic at Saraan Truck Center and that he bought tools from Stone. "Stone would come to Saraan once a week to see if we needed anything. Stone carries tools on his truck. When somebody purchased something, Stone would just walk outside and get it. Last week I stepped right inside the door of Stone's truck. I saw shelves in the truck and drawers and tools. He has a lift on the back of it. You use a lift to get things from the ground to the truck, heavy things. Stone's vehicle appears to be a one-ton chassis. A ½ ton truck means it's designed to carry a ½ ton pay load." Carroll said photographs of the vehicle showed it to be greater than ½ ton.

Photographs of the vehicle showed it parked in defendants' driveway in the subdivision. On each side is a large painted legend reading, "Snap–On." The letters appear to be at least a foot high and the legend itself is at least seven feet wide. The front of the vehicle has a legend reading, "Snap-on Tools." This sign stretches across at least 80 percent of the width of the front. The vehicle has dual wheels in the rear.

Testifying in his own behalf, defendant Stone said that he was a Snap-on distributor and owned the vehicle which he used in his business. "It is a class A Dodge motor home chassis—a display van. I use it to display Snap-on and (sic) merchandise, display items. I have tools inside the vehicle. The tools are sent to me in display packs. Wrenches can be laid on the shelving in different arrangements to display them. I deduct the vehicle expenses as business expenses. Prior to a month ago, it had a local license as a truck. I use it every day in my business. The last time I used it as a recreational vehicle was last April (three

months prior to trial). The vehicle shown in the photographs is my vehicle. It has a lift on the back to lift heavy objects. I would not consider that standard for a recreational vehicle. The vehicle weighs more than 6,000 pounds."

Dictionary definitions of the word "truck" include the following: "Any of various heavy automotive vehicles designed for transporting loads." American Heritage Dictionary of the English Language; "Any of various forms of vehicle for carrying goods and materials, usually consisting of a single self-propelled unit, but also often composed of a trailer vehicle hauled by a tractor unit." Random House Dictionary of the English Language, 2d ed. unabridged; "A wheeled vehicle for moving heavy articles." Webster's New Collegiate Dictionary; "Any of numerous vehicles for transporting heavy articles." Webster's New International Dictionary, 2d ed. unabridged.

As pointed out in *Lake St. Louis Community Ass'n v. Leidy*, 672 S.W.2d 381 (Mo.App.1984), a case on which defendants principally rely, § 301.010(45)[3] (formerly § 301.010(34) RSMo Supp.1982), contains the following definition: " 'Truck', a motor vehicle designed, used or maintained for the transportation of property."

In *Leidy*, the issue was whether the vehicle was within the scope of a restrictive covenant prohibiting parking, on any lot in the subdivision, of "trucks or commercial vehicles, boats, house trailers, boat trailers, and trailers of every other description." Leidy's vehicle was "an eighteen-foot long Ford Holiday Ramblette Mini Motor Home." There was no separation between the driver's compartment and the rear of the vehicle which was fitted with full kitchen and bathroom facilities and sleeping accommodations. The manufacturer had sold a "bodiless cab and chassis" to another company which added a "camper shell and equipment." The trial court found that Leidy's vehicle was of the type prohibited.

The court of appeals held that the trial court misapplied the law. The court said that the trial court's finding "clearly consti-

tutes an extension by implication of the restriction." The court pointed out that plaintiff's own witness had testified that whether a vehicle was a truck depended on its interior modifications. "If designed to haul freight or cargo, it is a truck. If designed to haul people, it is not." The court said that testimony was consistent with the statutory definition of truck contained in § 301.010(45). The court also said that if the purpose of the restriction had been to limit the size of vehicles, it would have been a simple matter to specify weight or dimensional limits permitted. The court also said, "Rather, the covenant is directed to the use to which vehicles may be put.... It clearly does not focus upon the size of the vehicle."

In *Leidy* the terminology of the covenant was directed to the use of the vehicle rather than to its type. In the case at bar the restriction is directed to the type of vehicle. Here there can be no doubt that Stone's vehicle, by its appearance, size, and his business use of it in hauling tools, was a truck. There is no merit in any of the reasons advanced by defendants in support of their challenge to the weight and sufficiency of the evidence.

The word "truck" is one in common usage and has a plain, everyday, popular meaning. Stone's vehicle was designed for transporting loads of goods and materials and it was used for that purpose. It was self-propelled. It contained a lift to be used in connection with heavy articles. It had been recently licensed as a truck. Although Stone may have used it occasionally for recreational purposes, he used it regularly as a business vehicle. Erwin testified that the vehicle was bigger than a ½ ton truck and was probably like a 1½ ton truck.

This court holds that there was substantial evidence to support the finding of the trial court that defendants' vehicle was a truck and included in the word "trucks" used in the restriction. This court also holds that there was substantial evidence to support the finding of the trial court that defendants' vehicle "weighs more

3. All references to statutes are to RSMo 1986, V.A.M.S.

than ½ ton and is designed to carry a load in excess of ½ ton." The order of the trial court was not invalid for any of the reasons assigned by defendants.

The judgment is affirmed.

PARRISH, P.J., and SHRUM, J., concur.