In the ESTATE OF Goldie Elizabeth BREWSTER, deceased.

Michael A. WILSON, Larry A. Wilson, and Jerry Wilson, Appellants,

v.

Curtis BREWSTER, Respondent.

No. 17182, 17021.

Missouri Court of Appeals, Southern District, Division One.

May 14, 1991.

W.H. Thomas, Jr., Thomas, Birdsong, Clayton & Haslag, P.C., Rolla, for appellants.

Jerry L. Wilkerson, Wilkerson & Seay, Salem, for respondent.

MAUS, Presiding Judge.

Michael A. Wilson, Larry A. Wilson and Jerry Wilson (appellants) are devisees under the will of Goldie Elizabeth Brewster, decedent. Curtis Brewster is the surviving husband of the decedent. He filed a renunciation of decedent's will. § 474.160. Subsequently, the Probate Division entered a judgment under § 474.163 determining the value of the estate for the purposes of § 474.160. The appellants appeal from that judgment.[1]

---

1. The Personal Representative filed a Notice of Appeal in Case No. 17021. The appeals have

Curtis Brewster and Goldie Elizabeth Brewster were married in 1977. Curtis Brewster had lived in Blue Springs. He was retired and received a pension. Goldie Elizabeth Brewster owned a farm in Dent County, but had no income. The couple lived on the farm. Extensive improvements were made to the dwelling on the farm from funds of Curtis Brewster. They raised cattle on the farm and on rented farms. Goldie Elizabeth Brewster died December 27, 1988. On January 20, 1989, her will was admitted to probate. The decedent's brother, Clyde N. Wilson, was appointed Personal Representative. On January 24, 1989, Curtis Brewster filed an instrument, the body of which reads as follows:

## "ELECTION OF SURVIVING SPOUSE

The undersigned surviving spouse of the above named decedent does hereby elect to take my legal share in the estate of said decedent and I do hereby renounce all provisions in the will of the decedent inconsistent herewith.

The undersigned swears that the matters set forth above are true and correct to the best knowledge and belief of the undersigned, subject to the penalties of making a false affidavit or declaration."

The instrument was signed, but not acknowledged nor sworn to before an officer authorized to administer oaths.

On January 9, 1990, the Personal Representative filed a "Petition for Determination of Surviving Spouse's Share." A hearing was held upon that petition. After taking the matter under advisement, the Probate Division entered an order determining the share of the surviving spouse to be $89,500.12. That determination was based upon findings of the values and amounts necessary to calculate the value of the augmented estate under § 474.163. Those findings, in general, followed the format of the example of such a computation of the surviving spouse's elective share set forth in Mo. Estate Administration, § 8.43 (MoBar 3rd ed. 1984 and 1989). These monetary findings in that format were, in the judgment appealed from, supplemented by extensive explanations and subsidiary findings in footnotes to those amounts. The order is commendably thorough and addresses all of the issues raised at the hearing.

█ The appellants' first point on appeal is that the husband's election is void because it was not acknowledged. Section 472.080.2 provides:

"No defect of form or substance in any document invalidates any proceedings after judgment on the document."

The hearing upon the Personal Representative's petition was held and the judgment entered without objection to the form of the husband's election. His failure to acknowledge the election as provided in § 474.190 was waived. Cf. *Basler, Estate of, v. Delassus*, 690 S.W.2d 791 (Mo. banc 1985); *In re Estate of Fugett*, 564 S.W.2d 628 (Mo.App.1978).

The appellants' next point asserts the Probate Division erred in denying their after-judgment motion for a new trial on the basis of newly-discovered evidence. An issue tried at the hearing was the number of cattle owned by the parties at the time of the death of Goldie Elizabeth Brewster. Curtis Brewster testified that when the parties were married, his wife owned no cattle. That over the years they bought and sold cattle which they raised on her farm and on rented farms. Curtis Brewster further testified that he supplied all of the money with which the cattle were initially purchased, although the proceeds were deposited in a joint account and some cattle were purchased with funds from the joint account. At the time of the death of Goldie Elizabeth Brewster, the parties had 48 cows and two bulls.

Robert A. Wilson, a brother of the decedent, lived about one or one and one-half miles from her. He testified that within a

been consolidated and the Personal Representative has adopted the brief of appellants. Nothing in this opinion should be construed to determine the Personal Representative is a proper party to this appeal. See *Estate of Broadhurst*, 737 S.W.2d 504 (Mo.App.1987); *Matter of Estate of Savage*, 650 S.W.2d 346 (Mo.App.1983).

week after her death, he counted 214 cattle on her farm. Michael A. Wilson, son of Robert A. Wilson, nephew of Clyde Wilson and the decedent, testified he helped feed cattle for the Brewsters. He testified he would say the figure of 214 cattle was close. Curtis Brewster testified, in rebuttal, that the figure of 214 cattle was not correct. The trial court specifically found:

"14 The Court in establishing this figure specifically is finding that Mr. Brewster by operation of law is now the sole owner of 48 cows (@ $450.00 per head) and two bulls ($1,500.00). Although the evidence indicates that Mr. Brewster purchased the original herd, it also appears that the herd was maintained through the joint checking account."

The Probate Division did not make any finding concerning the decedent's contribution to the acquisition of the cattle. See *Estate of Leve v. Leve,* 704 S.W.2d 263 (Mo.App.1986).

The Personal Representative's motion for a new trial was based upon his discovery of an "Application for Emergency Feed" dated July 11, 1988, signed by Curtis Brewster and filed with the Department of Agriculture. That form lists five bulls, 131 cattle, eight cattle which were one year to six months' old, and 80 cattle under six months of age. The motion alleges "that this information came to the Personal Representative's knowledge since the trial, [and] that it was not owing to a lack of diligence that the information was not acquired sooner". The Probate Division denied the motion without making any specific findings. When a motion for new trial on newly-discovered evidence is overruled, it should not be disturbed but for clear abuse and "the onus probandi is cast upon appellant to display that the trial court clearly erred." *Gehner v. McPherson,* 430 S.W.2d 312, 315 (Mo.App.1968).

To establish such a motion has merit,

"[t]he motion must show: (1) the evidence has only recently come to County's knowledge; (2) due diligence would not have uncovered the evidence sooner; (3) the new evidence is so material it would

probably produce a different result; (4) the new evidence is not cumulative; and (5) the object of the evidence is not to impeach the character or credit of a witness." *City of Eureka v. Hall,* 687 S.W.2d 917, 920 (Mo.App.1985).

To meet the second criteria, it is allegations of "facts which are required ... and unsupported statements of diligence are not sufficient." *Gehner v. McPherson,* 430 S.W.2d at 317 (citation omitted.) The appellants' motion stated no facts to establish due diligence would not have uncovered the application sooner. The Probate Division did not abuse its discretion in denying the motion.

The appellants' last contested point is "[t]he trial court erred in ordering a specific dollar amount for the surviving spouse's elective share at this point, since not all values necessary for the determination of such share have been ascertained."

Section 474.160.1(1), in relevant part, provides that an electing spouse shall receive "one-half of the estate" or "one-third of the estate". Section 474.160.1(2) provides:

"When a surviving spouse elects to take against the will he shall be deemed to take by descent, as a modified share, such part of the estate as comes to him under the provisions of this section, and shall take nothing under the will;".

Section 474.163 provides that for the purposes of § 474.160, the estate to be considered is the "augmented estate" as defined in that section. In general, the augmented estate is property derived by the surviving spouse from the decedent by any means other than testate or intestate succession, exempt property or family allowance without a full consideration in money or money's worth. The value of the money and property so derived by a surviving spouse "shall be offset against the elective share given by § 474.160."

Section 474.163 is drawn from the Uniform Probate Code. Section 2–201 of that probate code provides a renouncing spouse shall take "an elective share of one-third of the augmented estate" as defined

in that code. Section 2–202 of that probate code defines the augmented estate to include not only property derived by the surviving spouse, but "property transferred by the decedent at any time during marriage, to or for the benefit of any person *other than* the surviving spouse, to the extent that the decedent did not receive adequate and full consideration in money or money's worth for the transfer, if the transfer is of any of the following types:". (Emphasis added.) Section 2–205(d) of that probate code, in part, provides: "After notice and hearing, the Court shall determine the amount of the elective share and shall order its payment from the assets of the augmented net estate or by contribution as appears appropriate under Section 2–207." Those and other provisions make it clear that under the Uniform Probate Code the share of a renouncing spouse is to be defined in the terms of a fixed sum. See *In re Estate of Cole,* 200 N.J.Super. 396, 491 A.2d 770 (N.J.Super.Ch.1984).

When the matter has not been at issue, it has been assumed that the share of a renouncing spouse under § 474.160 is to be defined in terms of a fixed sum. See Borron, 3 Missouri Practice, Probate Forms Manual, Form 3.262, pp. 286–87 (1985); Mo. Estate Administration, § 8.43 (MoBar 3rd ed. 1984 and 1989).

However, it is not beyond question that the statutes of this state mandate that result. As noted, § 474.160.1(1) provides a renouncing spouse shall take one-half or one-third of "the estate." Section 474.160.1(2) provides a renouncing spouse shall take "by descent, as a modified share." Section 474.163 provides a method for calculating the value of the estate for purposes of § 474.160. No Missouri statute expressly provides that the share of a renouncing spouse shall be determined in terms of a fixed sum.

"The election statute itself does not indicate where the loss to remaining beneficiaries should fall. Section 474.160 RSMo.1978. There is case law which indicates *that an electing spouse takes an undivided interest* in all of the real property in the estate. See, e.g., *Borchers v. Borchers,* 352 Mo. 601, 179 S.W.2d

8, 10 (1944); *Wigley v. Beauchamp,* 51 Mo. 544, 547 (1873); *In re Estate of Youngblood,* 447 S.W.2d 824, 827 (Mo. App.1969), aff'd 457 S.W.2d 750 (Mo. banc 1970). However, these cases were either decided before the current election statute or their language is not dispositive of the issue before us." *Wilkinson v. Brune,* 682 S.W.2d 107, 109 (Mo.App. 1984). (Emphasis added.)

An alternative construction of the statutes is that the calculation of the augmented estate is to be used in determining the fractional share of a renouncing spouse in the assets to be distributed, in kind or in cash. However, that question cannot be reached in this case.

■ The appellants' point does not raise the question of whether the husband's elective share is to be determined in terms of a fractional interest in the assets to be distributed or in terms of a fixed sum. The question raised is whether or not the trial court erred in ordering a specific dollar amount "at this point".

" 'The questions for decision on appeal are those stated in the points relied on, and a question not there presented will be considered abandoned on appeal and no longer an issue in the case.' *Pruellage v. DeSeaton Corporation,* 380 S.W.2d 403, 405[3] (Mo.1964). Matters which could have been raised, but were not, are neither mentioned nor considered. *Conway v. Judd,* 723 S.W.2d 905, 906 (Mo.App.1987)." *Engel v. Stone,* 798 S.W.2d 517, 518 (Mo.App. 1990).

Also see *School Dist., Etc. v. Transamerica Ins. Co.,* 633 S.W.2d 238 (Mo.App. 1982).

It was not the position of the Personal Representative that the Probate Division was prematurely determining the share of the husband. On January 9, 1990, the Personal Representative filed a copy of his Notice of Final Settlement and Petition for Distribution. He scheduled the filing of the final settlement and petition for distribution for February 9, 1990. On January 9, 1990, he filed the Petition for Determination of the Surviving Spouse's Share. The hearing on that petition was held on February 8, 1990. The prayer of that petition

included a request "for the court to then and there determine the elective share of the said surviving spouse." At the hearing, at the request of counsel of the Personal Representative, the Probate Division took judicial notice of the file. At the conclusion of the hearing, counsel stated:

"Your Honor, I would announce to the Court that there is only the one claim that has been filed by Mr. Brewster. And to our—the personal representative's knowledge, there are no other claims filed nor none others have been asserted against him nor has he paid any other claims. And the only other matter that is to be taken into consideration is the cost of administration which would include the court costs which again can be determined from the file and the amount of the personal representative's fee and the attorney's fee which, again, can be determined by statute from the file."

The appellants do not contend they are not bound by the actions of the Personal Representative by virtue of § 472.300(2)(b). There is nothing in the record to establish the Probate Division erred in fixing the elective share "at this time". The point is denied.

By a separate point, the appellants contend the Probate Division erred in deducting the $7,500.00 Homestead Allowance from the gross estate in determining the net distributable probate estate. The respondent husband concedes this to be true. The judgment of the Probate Division is modified by reducing the figure for exempt property and family allowances from $19,500.00 to $12,000.00 and the subsequent calculations in that judgment are amended to take into account that change. The result is a judgment that the distributive share of the surviving spouse is $85,750.12. The judgment of the Probate Division is modified in accordance therewith. As so modified, the judgment of the Probate Division is affirmed.

PREWITT and CROW, JJ., concur.