Craig **PIJANOWSKI**, Respondent,

v.

Hope **PIJANOWSKI**, Appellant.

No. WD 69193.

Missouri Court of Appeals,
Western District.

Oct. 21, 2008.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 25, 2008.

Application for Transfer Denied
Jan. 27, 2009.

---

Allen S. Russell, Kansas City, MO, for Appellant.

Larry Dean Wright, Kansas City, MO, for Respondent.

Before HAROLD L. LOWENSTEIN, P.J., VICTOR C. HOWARD, Judge and THOMAS H. NEWTON, Judge.

VICTOR C. HOWARD, Judge.

Hope Edwards (formerly Hope Pijanowski) appeals the judgment of the Platte County Circuit Court setting a joint child custody schedule. In her two points on appeal, she claims the trial court erred in: (1) denying her motion for a new trial and/or to receive additional evidence and amend the judgment and decree of dissolution of marriage, and (2) implementing a child custody schedule that would be automatically modified when the child began attending kindergarten. Both points are denied, and the judgment of the trial court is affirmed.

**Factual and Procedural Background**

Hope Edwards ("Mother") and Craig Pijanowski ("Father") were married on June 25, 2002 in Warrensburg, Missouri. Mother and Father then moved to Platte City, Missouri, in October 2002. Mother and Father became the parents of one child during the marriage. Their son, Elijah, was born on February 25, 2003. Sergio, Mother's child from a previous relation-

ship, also resided with Mother and Father in Platte City.

Two years after Elijah was born, Mother began seeking employment in the airline industry as an airplane mechanic. She was unable to find the specific job she sought in the Kansas City area, but in August 2005, Mother was offered a job with U.S. Airways in Washington, D.C. Because Mother believed this job would give her the experience necessary to obtain a job in the Kansas City area, Mother and Father agreed that Mother would take the job in Washington, D.C. on a six month trial basis.

During this six month period, Elijah and Sergio stayed in the marital residence in Platte City with Father. Mother returned to Platte City when she had days off from work. While Mother was away, Father took care of Elijah and Sergio, with the help of the family's babysitter and Elijah and Sergio's maternal grandmother.

In December 2005, while working in Washington, D.C., Mother received an offer for a training opportunity in Pittsburg, Pennsylvania, which would begin in February 2006. Because it was Father's understanding that Mother would return to Platte City after six months of work in Washington, D.C., Father disagreed with Mother's decision to pursue further training away from Platte City. Therefore, Father filed a petition for dissolution of marriage on January 23, 2006, in the Platte County Circuit Court.

The trial court heard evidence regarding the petition for dissolution of marriage on July 18, 2007. By this time, Mother had relocated to and obtained employment in West Plains, Missouri. Mother testified that Elijah's grandmother was retired and lived in the area and, therefore, could help care for Elijah while Mother worked. Mother also testified that she had researched the West Plains community and

school district and found them suitable for Elijah's needs. Mother asked the court to adopt a parenting plan in which Elijah would live primarily with Mother during the school year but would still have 116 overnight visits per year with Father.

Father testified that he wanted Elijah to reside in Platte City when he begins kindergarten. Father testified that Platte City had been Elijah's home for his entire life, he had friends there, and Father believed Platte City offered better schools and greater opportunities for Elijah than West Plains. Additionally, Mother and Father had previously agreed that Father would keep the marital home, which Father testified had been Elijah's home for his entire life.

The trial court entered its Judgment and Decree of Dissolution of Marriage on October 16, 2007. The trial court granted joint legal and physical custody of Elijah to Mother and Father, with Father's address designated as Elijah's address for the purposes of mail and education. The parenting plan adopted by the trial court provided that, prior to Elijah entering kindergarten in August 2008, Mother and Father would alternate visitation with Elijah in thirty day increments. To accommodate Elijah entering kindergarten, the parenting plan altered the custody schedule in August 2008, providing that Elijah would primarily reside with Father, with Mother having custody of Elijah during one weekend each month, spring break, summer break (with three weeks reserved for vacation time with Father), and alternating holidays.

After judgment was entered Mother discovered that Father had pled guilty to a driving while intoxicated (DWI) charge approximately one month before the trial, prompting Mother to file a motion for a new trial and/or to receive additional evidence and amend the judgment and decree

of dissolution of marriage on November 15, 2007. The trial court heard arguments on Mother's motion on December 20, 2007, and denied the motion. This appeal by Mother followed.[1]

## Point I

In her first point on appeal, Mother contends that the trial court erred in denying her motion for a new trial and/or to receive additional evidence and amend the judgment and decree of dissolution of marriage. She claims that the trial court should have granted a new trial or received her evidence regarding Father's DWI because she had shown each of the six elements a party must establish when seeking a new trial on the basis of newly discovered evidence.

### A. Standard of Review

"The trial court has wide discretion in ruling on a motion for a new trial and is vested with substantial discretion over matters of fact in ruling on new trial motions." *Higgins v. Star Elec., Inc.*, 908 S.W.2d 897, 903 (Mo.App. W.D.1995). The exercise of the trial court's discretion will not be disturbed unless clear abuse is shown. *Tuffli v. Bd. Of Educ.*, 643 S.W.2d 296, 297 (Mo.App. E.D.1982). "This is particularly true in cases tried without a jury." *Id.*

### B. Analysis

■ Rule 78.01 provides the standard for a trial court ruling on a motion for a new trial:

The court may grant a new trial of any issue upon good cause shown. A new trial may be granted to all or any of the parties and on all or part of the issues after trial by jury, court or master. On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact or make new findings, and direct the entry of a new judgment.

■ The party who seeks a new trial on the basis of newly discovered evidence must show:

(1) that the evidence has come to [her] knowledge since the trial; (2) that the failure of the evidence to come to [her] knowledge sooner was not the result of a lack of due diligence; (3) that the evidence is so material that it would probably produce a different result if a new trial were granted; (4) that the evidence is not cumulative only; (5) that the parties' affidavit should be produced, or its absence be accounted for; and (6) that the object of the evidence is not merely to impeach the character or credibility of a witness.

*Anderson v. Anderson*, 854 S.W.2d 32, 37–38 (Mo.App. W.D.1993). Furthermore, new trial motions on the ground of newly discovered evidence "are viewed with disfavor and courts grant them as an exception and refuse them as a rule." *Williams*

---

1. As a preliminary matter, it should be noted that Father argues that Mother's brief should be dismissed because its statement of facts does not meet the requirements of Rule 84.04(c), which requires "a fair and concise statement of the facts relevant to the questions presented for determination without argument." Although the statement of facts in Mother's brief has an overly broad scope, we do not dismiss her brief "because this case involves the welfare of a child which is paramount to the interests of any of the contesting persons." *In the Interest of D.M.H.*, 516 S.W.2d 785, 787 (Mo.App.1974). *See also Barewin v. Gillette*, 343 S.W.2d 78, 79 (Mo. App.1961) (holding that appellant's statement of facts, although no model, was not so verbose and argumentative as to call for dismissal of appeal).

*v. McCoy,* 854 S.W.2d 545, 554 (Mo.App. S.D.1993). "A trial court has broad discretion in ruling on motions on such grounds, and an appellate court will interfere only where that discretion has been abused." *Id.*

In her motion, Mother alleged that, since the trial, she discovered that Father had entered a guilty plea in connection with a DWI charge prior to the entry of the trial court's judgment. Mother alleges that such conduct presents concerns regarding Father's ability to care and provide for Elijah. On appeal, Mother argues that she has established the six elements listed in *Anderson,* and that therefore, the trial court should have granted a new trial and/or received additional evidence and amended its judgment.

Although Father stipulates that information concerning his DWI did not come to Mother's knowledge until after the trial, Father asserts that Mother's motion failed to establish several of the other elements she was required to show. Primarily, Father argues that Mother has not shown that her failure to learn of the evidence sooner was not the result of her lack of due diligence.

"[A] new trial will not be granted 'unless the movant can show that the evidence in question could not have been obtained in time for trial by the exercise of due diligence.'" *Higgins,* 908 S.W.2d at 903 (quoting *Morgan v. Wartenbee,* 569 S.W.2d 391, 398 (Mo.App.1978)). "Due diligence is defined as 'that degree of assiduity, industry or careful attention called for under the circumstances of the case and does not require impeccable, flawless investigation in all situations.'" *Id.* at 903–04 (quoting *Young v. St. Louis Pub. Serv. Co.,* 326 S.W.2d 107, 112 (Mo.1959)). To show due

diligence, the movant must make "allegations of facts," rather than "unsupported statements of diligence." *Id.* at 904 (quoting *Estate of Brewster,* 809 S.W.2d 183, 185 (Mo.App. S.D.1991)). "Bald assertions that a party was not negligent in failing to discover evidence sooner do not suffice." *Id.*

In her motion, Mother makes no reference to any facts showing her due diligence in this matter. Moreover, on appeal Mother's arguments regarding due diligence focus on why she could not obtain the information, rather than on what steps she took to discover it. For instance, Mother claims that to impose a duty to investigate on Mother "would be to impose a ridiculously high standard on any litigant seeking to avail themselves of a remedy under Rule 78." Mother further argues that she had no reason to know of or investigate Father for a DWI because she lived far from and had little contact with Father and because Father did not disclose the DWI to Mother.

As Father argues, the evidence of his DWI was a matter of public record before the trial and was readily discoverable prior to trial utilizing traditional discovery tools and other easily accessible and inexpensive means. Missouri CaseNet is a free online database in which the public can access case records including docket entries, parties, judgments, and charges in public court.[2] If Mother had entered a search of Father's name on CaseNet, she would have found information relating to Father's DWI. Furthermore, while arguing against Mother's motion before the trial court, Father's attorney stated that Mother had asked questions during depositions about the frequency of Father's alcohol

---

2. This court recently noted that "The Missouri court system now has an automated case record service, CaseNet, by which … litigation history can be readily accessed by any computer at any time." *McBurney v. Cameron,* 248 S.W.3d 36, 41 (Mo.App. W.D.2008).

consumption. This suggests that perhaps Mother had more of a reason to investigate Father than she claims in her brief.

Additionally, as previously noted, it was Mother's burden to demonstrate that the evidence was so material that it would probably produce a different result in a new trial. Having recently heard and weighed extensive evidence in the case, the trial court occupies the best position to make this determination. The trial court did not abuse its discretion in denying Mother's motion for a new trial and/or to receive additional evidence and amend the judgment and decree of dissolution of marriage. Point one is denied.

## Point II

In her second point on appeal, Mother contends that the trial court erred in adopting a parenting plan with a custody schedule that would change when Elijah began attending kindergarten. Mother claims that this amounted to an automatic modification of custody without the requisite showing under section 452.410, RSMo 2003,[3] that a change of circumstances warranted modification of custody.

### A. Standard of Review

In reviewing the judgment of the trial court, the appellate court will affirm the judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

With respect to custody and visitation issues, the trial court has broad discretion, and the reviewing court gives even greater

deference to these decisions than in other civil cases. *Dunkle v. Dunkle*, 158 S.W.3d 823, 833 (Mo.App. E.D.2005). The reviewing court will defer to the trial court's greater ability to assess the credibility of witnesses and will view all facts and reasonable inferences in a light most favorable to the trial court's decision. *Id.* at 832–33. The reviewing court will presume that the trial court awarded custody in accordance with the best interests of the child after reviewing all of the evidence, and the decision will only be reversed if the reviewing court is "firmly convinced that the welfare and best interests of the child[ ] require otherwise." *Id.* at 833.

### B. Analysis

■ The portion of the trial court's judgment at issue in Mother's appeal provides for a change in the custody arrangement once Elijah enters kindergarten, which the court presumed, based upon the evidence, would occur in August 2008. While the parents were to alternate custody of Elijah every thirty days prior to him beginning kindergarten, the parenting plan adopted by the court states that after Elijah enters kindergarten, Elijah would reside primarily with Father, and Mother's custody of Elijah would be limited to one weekend per month, Elijah's spring and summer breaks, and alternating holidays.

Mother cites several cases for the proposition that provisions of dissolution decrees which order an automatic change of child custody upon the happening of some future event are unenforceable. *See Burch v. Burch*, 805 S.W.2d 341 (Mo.App. E.D. 1991); *In re Marriage of Dusing*, 654 S.W.2d 938 (Mo.App. S.D.1983); *Rice v.*

---

**3.** Section 452.410 provides that a court shall not modify a prior custody decree unless it has jurisdiction and finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time

of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child.

*Shepard,* 877 S.W.2d 229 (Mo.App. W.D. 1994). In *Burch,* the court found that a provision ordering a change of custody if the mother stopped residing with her parents was unenforceable. 805 S.W.2d at 343. Similarly, the courts in *Dusing* and *Rice* refused to enforce provisions that provided for automatic transfers of custody if one of the parents relocated. *Dusing,* 654 S.W.2d at 943; *Rice,* 877 S.W.2d at 232. Because the provision in *Rice* could have resulted in a change of custody at any time during the child's minority, the court was concerned that an order based on a remote possibility of relocation would create an unpredictable and unstable custody arrangement. *See* 877 S.W.2d at 232.

■ As established by the cases cited above, "A conditional judgment, that is one whose enforcement is dependent upon the performance of future acts by a litigant and which is to be annulled if default occurs, is void." *Burch,* 805 S.W.2d at 343. Unlike the provisions in *Burch, Dusing,* and *Rice,* the enforcement of the trial court's judgment is not dependent upon future acts by the parties but is, instead, based upon the known need of the child to have a predictable and stable custody arrangement, particularly when school begins. Furthermore, the trial court's order was not speculative as there was a reasonable certainty that Elijah would begin kindergarten in August 2008. In the interests of judicial economy, the convenience of the parties, and the best interests of the child, it makes little sense to force the parties back into court thirteen months later under these circumstances.

Mother argues that other changes could have occurred during the thirteen month interval between the trial and when Elijah begins kindergarten. The possible changes Mother references in her brief are far more speculative than the reasonable certainty that Elijah would begin kinder-

garten in August 2008. If any changes occur, Mother may at that time bring a motion before the trial court to modify the current custody arrangement.

The trial court looked at the facts and circumstances known to it at the time of its decree and fashioned a common sense remedy, taking into account the reasonable certainty that Elijah would begin attending kindergarten in thirteen months. Therefore, the trial court did not abuse its discretion in implementing a custody arrangement in which Father would have primary custody once the child began attending kindergarten. Point two is denied.

The judgment of the trial court is affirmed.

All concur.