SHERRI B. SULLIVAN, J.
Introduction
A.M.G. (Mother) appeals from the trial court’s Findings of Fact, Conclusions of Law and Judgment of Paternity, Child Custody and Support (Judgment) awarding her and J.P.G. (Father) joint legal and physical custody of S.KB.-G. (Child). We affirm as modified.
Factual and Procedural Background
On October 30, 2015, Father filed a Petition for Declaration of Paternity, Child Custody, Visitation and Support seeking a declaration of paternity and joint legal and physical custody of Child. On December 3, 2015, Mother filed her Answer and Counter-Petition admitting Father was Child’s natural father, and seeking an order for sole legal and physical custody. On March 23, 2016, the trial court conducted a hearing on the matter, during which the following evidence was adduced.
Child was born on August 1, 2012. The parties were never married. Mother lived with Father and his family for approximately two years prior to Child’s birth, but the parties were not living together at the time of the birth. From the time of Child’s birth until sometime in 2013, Mother and Child lived with Mother’s mother. During this time, Father voiced concerns, and the parties had a disagreement, because Mother would leave Child in her mother’s care even though she was a methamphetamine user with a criminal history. Father testified he saw Child “whenever he could” during this period and before the parties set up a more formal custody schedule.
Father and several family members testified, and the trial court concluded, that during 2013 and through July 2014, the parties occasionally cohabitated with each other and jointly raised and co-parented Child in Mexico, Missouri.
In the summer of 2014, Mother moved to Ralls County with Child where Mother began working as a dispatcher with Ralls County Emergency Services. Mother testified she made this decision unilaterally. Currently, Mother lives in Perry, Missouri with her husband in a three-bedroom house. Child has her own room and uses a spare bedroom as a playroom. Mother testified her job as a dispatcher requires her to live in Ralls County.
*235 In October 2014, the parties began exercising an alternating week custody schedule whereby each party would have Child during his and her “short” work weeks so that each party could maximize their time with Child. Mother works from 6 a.m. to 6 p.m. two days one week and five days the following week, and has every other weekend off. Father works from 6 p.m. to 6 a.m. three days one week and four days the following week.
The trial court found the parties maintained this custody schedule until Mother married in mid-October 2015. At that time, Mother informed Father the visitation schedule had ended and she would not allow Father any custody of Child until Father agreed to exercise physical custody only on alternating weekends. Father refused to agree to Mother’s terms, so Mother denied Father all visitation between mid-October 2015 and March 23, 2016, absent a single two-hour visit at a fast food restaurant in late October 2015. At trial, Mother admitted to knowingly alienating Child from Father for five months by denying Father’s repeated requests for custody or visitation. Mother asserted she did. so because Father threatened to keep Child from her—a claim Father denied— but admitted Father had never withheld Child from her at any time since Child was born.
Father lives in México, Missouri with his mother, sister, girlfriend, and five-month-old son. When Child is with Father, she sleeps in her own room next to Father and his girlfriend’s room. Father usually sleeps from 11:00 a.m. to 4:00 p.m. on the days he works. When in his custody, Father provides for Child’s care except when working or sleeping, at which time Father’s mother or sister takes care of Child. When together, Father and Child spend their time doing things as a family and visiting extended family in the area. Father and his girlfriend have been in a relationship since January 2015, and Father testified Child and Ris girlfriend are familiar with each other and were beginning to build a great.relationship. Father' stated his son was born in November 2015 and he would like his children to be raised together. Child has never met her younger brother due to Mother’s refusal to allow Father custody or visitation. Mother testified it bothered her “a bit” that Child has never met her younger brother.
Father presented evidence Mother’s husband was convicted of driving while intoxicated in 2014 and was arrested for driving without a valid license in 2015. Father testified, based on information he received from Mother, that Mother’s husband transports Child without being legally licensed to drive.
Father requested joint legal and physical custody, recommended the parties continue their alternating week custody schedule, and requested he be named the primary physical custodian for mailing and educational purposes." Father testified he would like Child to attend Mexico public schools in Audrain County and she could start kindergarten in August 2018.
At trial, Mother asserted Father only exercised visitation on alternating weekends for the majority of Child’s life and the parties only very briefly had an alternating week custody schedule. Mother testified they discontinued this schedule because Child did not adjust well to the arrangement.
Mother requested sole legal and physical custody,- and her residence be designated as Child’s address for mailing and edu- • cational purposes, asserting Child had always lived with her and she has always been the primary caregiver and decision-maker for Child.'Mother proposed Father have custody on alternating weekends, which Mother testified was more time than *236 Father ever had with Child. Mother maintained .Father had. neyer been involved or interested:'in taking care of or. making decisions for Child, and that she could not think of a single decision regarding Child they had ever made together. Mother testified the parties lived together as a family for only two weeks, and that Father and his family members lied in their trial testimony indicating the parties lived together off and on for almost a year and half after Child was born.
Following the submission of the evidence, the trial court entered a temporary order reestablishing the alternating week custody schedule and ordering Mother to deliver Child to Father the next day. On May 19, 2016, the trial court issued its Judgment, declaring Father’s paternity of Child and awarding the parties joint legal' and physical custody. The Judgment and incorporated parenting plan designated Father as Child’s residential parent for mailing and educational purposes, and provided an alternating week custody schedule until Child begins kindergarten. Once Child starts school, primary . custodial placement would vest in Father with Mother receiving custody on alternating weekends. The court ordered the current alternating week physical custody schedule remain unchanged in the event Mother relocated within Child’s school district in Audrain County. The' court ordered the parties to discuss and attempt'to agree in making decisions for Child but if they could not agree, Father would have final decision-making authority. The c'ourt ordered Father to pay Mother $18 in monthly child support and ordered Mother to pay Father $4,000 toward his attorney’s fees. This appeal follows. Additional facts will be discussed as relevant to the issues on appeal. ..
Points Relied On
In her first point on appeal,. Mother argues the trial court erred in allocating physical custody time equally between the parties because the award is unsupported by substantial evidence .and is based upon a misapplication of law, in that joint physical custody does not require an equal amount of time with each parent; such a custody schedule is only. justified in an exceptional case, not as a default; and there was no .demonstration the custody schedule is in Child’s best interest.
In her second point on appeal,' Mother contends the trial court misapplied the law by requiring her to relocate to Audrain County before August 2018 to avoid constriction of her physical custody time, in that the trial court does not have the power to confine a -parent’s. residence to a particular area and the provision creates a conditional judgment by attempting to provide for automatic ■ modification of the physical custody schedule if Mother, fails to comply with the court’s mandate.
In her third point on appeal, Mother asserts the trial court erred in awarding the parties joint legal custody of Child because the award is not based upon substantial evidence and constitutes a misapplication of law in that- the award, which bestows upon Father the ability to resolve all disputes between the parties, is a de facto award of sole legal custody and there was no justification to grant Father such authority when there was no evidence Father participated in any decisions affecting Child.
In her fourth point on appeal, Mother argues the trial court abused its discretion in ordering, her to pay Father $4,000 toward his attorney’s fees, in that Mother’s income, was less than 65% of Father’s income and Mother’s fees exceeded Father’s request. , . ...
Standard of Review
On appeal, we will affirm the trial court’s judgment unless there is no sub *237 stantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. Loumiet v. Loumiet, 103 S.W.3d 332, 336 (Mo. App. W.D. 2003). “In child custody matters, we give greater deference to the trial court’s decision than in other, cases and will reverse the trial court’s custody determination only if the welfare of the child requires a different disposition.” Day ex rel. Finnern v. Day, 256 S.W.3d 600, 602 (Mo. App. E.D. 2008).
We presume the trial court 'considered all of the evidence. Loumiet, 103 S.W.3d at 336. On review, We view the evidence in the light most favorable to the trial court’s judgment and disregard all contradictory evidence and inferences. Ratteree v. Will, 258 S.W.3d 864, 868 (Mo. App. E.D. 2008). We also defer to the trial court’s superior ability to judge the witnesses' credibility, sincerity, character and other intangibles not revealed in the transcript. Id.
Discussion
Point I—Custody Schedule
The trial court must determine custody in accordance with the best interests of the child. Section 452.375.2 RSMo Supp. 2011. In doing so, Section 452.375 requires the court to consider all relevant factors, including the eight factors, enumerated in the statute, which are:
(1) The wishes of the child’s parents as to custody and the proposed parenting plan submitted by both parties;
(2) The needs of the child for a frequent, continuing and meaningful relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;
(3) The interaction and interrelationship of the child with parents, siblings, and any other person who may significantly affect.the child’s best interests;
(4)Which parent is more likely to allow the child frequent, continuing, and meaningful contact with the other parent; , :
(5) The child’s adjustment to the child’s home, school, and'community;
(6) The mental and physical health of all individuals involved-...;
(7) The intention of either parent to relocate the principal residence of the child; and ■ .
(8) The wishes of the child as to the child’s custodian. '
Section 452.375.2.
An award of joint physical custody gives each parent “significant,, but not necessarily. equal, periods of time during which a child resides with .,. each of the parents. Joint physical custody shall be shared by the parents in such a way as to assure the child of frequent, continuing and meaningful contact with both parents[.]” Section 452.375.1(3)..
On appeal, Mother argues the trial court erred in ordering the alternating week physical custody schedule because the court mistakenly believed a joint physical custody award required the court to award the parents an equal amount of time with Child. Mother further contends the law dictates an award of equai physical custody time is only justified in an exceptional case, and no evidence at trial suggested this custody schedule is in Child’s best interest.
Mother’s assertions are unsupported by the law or the record in this case. First, Mother does not point to anything in the trial court record or Judgment suggesting the trial court mistakenly believed equal time was required by the statute and this argument appears to be manufactured out of whole cloth. Instead, the court clearly *238 indicated the custody award was intended to provide Child with frequent,- continuing, and meaningful contact with both parents under the specific factual circumstances of the case. As already noted, the court continued the physical custody arrangement the parties had successfully been following for a year before Mother attempted to coerce Father into an alternative arrangement. In his petition, Father requested the court reestablish the arrangement. Before entering the. award, the court performed a thorough analysis of the Section 452.375.2 best-interest statutory factors and concluded the custody arrangement was in Child’s best interest. While Mother asserts on appeal it is not in Child’s best interest to be “bandied back and forth between her parents in such a way[,]” she does not actually set forth a best-interest analysis or any facts specific to this case suggesting' the alternating week custody schedule is not in Child’s best interest.
Further, Mother’s contention that an award of equal physical custody time is, as a matter of law, “generally not in the best interests of the child” is without merit. While the two Missouri cases cited by Mother found equal physical custody time was not in the best interest of the children in those cases, such cases were fact-specific and the opinions do not suggest this arrangement is disfavored in the law. Brisco v. Brisco, 713 S.W.2d 586, 589-90 (Mo. App. W.D. 1986) (despite advantages of an alternating weekly custody arrangement, it whs inappropriate because the parents were not emotionally equipped to deal with each other as equal partners in the care of the child and had used the child as a pawn in their disagreements, and there was no evidence the schedule was in the best interest of the child); and Bashore v. Bashore, 685 S.W.2d 579, 581 (Mo. App. W.D. 1985) (trial court failed to enter an award of either joint or sole custody and instead awarded an alternating week “split-custody” schedule wherein whichever parent was caring for the children also had “custody” of the children). Rather, joint custody awards with alternating periods of custody allowing for equal parenting time are permissible. See, e.g., In re C.H., 412 S.W.3d 375, 378 (Mo. App. E.D. 2013) (trial court ordered joint physical custody with alternate periods of two consecutive months'of physical custody until the child began kindergarten, at which time the child would principally reside with the father); and Gaudreau v. Barnes, 429 S.W.3d 429, 434 (Mo. App. E.D. 2014) (biweekly, joint physical custodial arrangement for pre-school aged child).
The trial court did not misapply the law and the court’s parenting plan is supported by substantial evidence, in that it awards both parents significant periods of physical custodial time; provides for Child to have frequent, continuing, and meaningful-contact with both her parents; and is in Child’s best interest. Mother’s Point I is denied.
Point II—Conditional Judgment
The trial court’s Judgment and Parenting Plan awarded the parties joint physical custody of Child on an alternating week basis until Child enters kindergarten in August 2018. The court ordered Father’s address be designated as Child’s address for mailing and educational purposes. The court’s Judgment further provides as follows:
Regular Custody Schedule Upon Child Entering Kindergarten
Upon [Child] entering kindergarten in August of 2018, Father shall then be the physical custodian with whom [Child] shall primarily reside as she attends Mexico Public Schools. Mother shall then have custody/visitations on alternating weekends from 6:00 p.m. Friday *239 until 6:00 p.m. Sunday. However, should [Mother] relocate back to the Audrain County School District on or before the time [Child] enters into kindergarten, then, in that event, the weekly custody schedule as stated above shall remain in effect, so long as [Mother] continues to reside and has relocated to the Audrain County School District.
(Emphasis in original).
Mother argues the trial court misapplied the law in that the order attempts to restrict her residence, which the trial court is without the power to do, and constitutes a conditional judgment by attempting to provide for automatic modification of the physical custody schedule if Mother fails to comply with the court’s mandate.
Generally, a judgment is deemed indefinite and unenforceable when its enforcement is conditional upon the occurrence or non-occurrence of á future act, the performance of which is outside the record. Burch v. Burch, 805 S.W.2d 341, 343 (Mo. App. E.D. 1991). As this Court held in Burch,
A conditional judgment, that is one whose enforcement is dependent upon the performance of future acts by a litigant and which is to be annulled if default occurs, is void.'...
In particular, provisions of dissolution decrees which order an automatic change of child custody upon thé happening of some event in the future have consistently been held unenforceable. As stated in Haldeman v. Haldeman, 685 S.W.2d 570, 571 (Mo. App. 1984), such an order “improperly predetermines what would constitute a significant change in circumstances to justify a change in custody.”
Burch, 805 S.W.2d at 343. See also Pijanowski v. Pijanowski, 272 S.W.3d 321, 327 (Mo. App. W.D. 2008); Shaw v. Shaw, 951 S.W.2d 746, 750 (Mo. App. W.D. 1997), holding modified by Sadler v. Favro, 23 S.W.3d 253 (Mo. App. W.D. 2000).
On appeal, Mother attempts to have the entire portion modifying the physical custody award upon Child’s entering school eliminated as an improper restriction on her residence and a conditional judgment. Mother, however, misinterprets the court’s order in that the Judgment contains two separate and distinct provisions: (1) ordering the adjustment to the parties’ physical custodial'time upon Child starting school, and (2) ordering no change in the current custody schedule in the event Mother elects to live in Child’s school district. Contrary to Mother’s assertion, the trial court does not restrict where Mother chooses to live and, in fact, presumes Mother will continue to exercise her rjght to live outside of Child’s school district and orders an appropriate custodial time adjustment.
Numerous cases have upheld custody awards modifying the custodial time periods once a minor child enters school. Pijanowski, 272 S.W.3d at 327; Lalumondiere v. Lalumondiere, 293 S.W.3d 110, 115 (Mo. App. E.D. 2009); In re C.H., 412 S.W.3d at 378 (trial court ordered joint physical custody with alternate periods of two consecutive months of physical custody until the child began kindergarten, at which time the child would principally reside with the father). These types of provisions are valid because'the enforcement of the judgment is not dependent upon future acts by the parties but based upon the inevitable need for the child to have a more predictable and stable custody arrangement when school begins. See Pijanowski, 272 S.W.3d at 327. Mother does not challenge the trial court’s judgment designating Father’s residence as Child’s address for mailing or educational purposes. Father testified Child can begin kindergarten in the Mexi *240 co school district in August 2018, an event quickly approaching. It is reasonable and appropriate for the trial court to anticipate and plan for the need to adjust the custodial arrangement at that time. Such provisions are not only in the interest of judicial economy but are for the convenience of the parties and in Child’s best interest, and the trial court did not err in implementing a custody arrangement in which Father would have primary custody once Child begins attending kindergarten. See id.
The second provision orders that no change in the current custody schedule occur in the event Mother elects to live in Child’s school district. While Mother’s attack on this provision is surprising because it appears to primarily benefit. Mother and Child by allowing the Current equal-time custody arrangement, to continue without having to seek a future modification from the court, she is correct that it constitutes a conditional order enforcement of which is dependent upon her performance of a future act. See Burch, 806 S.W.2d at 343.
This Court may strike surplus language and otherwise affirm a judgment “ ‘if the excess language is separable, does not affect the finality of the judgment and if the judgment is otherwise a proper subject for appellate disposition within the issue’s frame.’” Lavalle v. Lavalle, 11 S.W.3d 640, 661-52 (Mo. App. E.D. 1999) (affirming the judgment but striking provision limiting child’s relocation to another state to two years as surplus language), quoting T.L.I. v. D.A.I., 810. S.W.2d 551, 554 ,(Mo. App. E.D. 1991). See also In re Marriage of Brooke, 773 S.W.2d 496, 499 (Mo. App. S.D. 1989) (striking a provision for child visitation with father’s family if father was unable to maintain his own visitation rights). Here, the second provision providing.the.weekly custody schedule remain in effect, in the event Mother relocates to Child’s school district is separable from the rest of the Judgment and does not affect the finality of the Judgment. Based on the foregoing, the following portion of the Judgment is stricken: “However, should the Mother relocate back to the Audrain County School District on or , before the time the child enters into Kindergarten, then, in that event, the.weekly custody schedule as, stated above shall remain in effect, so .long as the Mother continues to reside and has relocated to the Audrain County School District.” Mother’s Point II is granted to this extent and denied in all other respects.
Point III—Joint Legal Custody •
The trial court awarded the parties joint legal custody of Child and ordered the parties to discuss and attempt to agree in making decisions for Child but vested final decision-making authority with Father in the event the parties could not come to an agreement. On appeal, Mother maintains the court’s judgment was not based upon substantial evidence and constituted a misapplication of the law because the court’s order allowing Father to resolve all disputes between the parties is a de facto award of sole legal custody and there was no evidence Father had previously participated in any decisions affecting Child.
Joint legal custody means “the parents share the decision-making rights, responsibilities, and authority relating to the health, education and welfare of the child, and, unless allocated, apportioned, or decreed, the parents shall,confer with one another in the exercise of decision-making rights, responsibilities, and authority[.]” Section 452.375.1(2).
Mother does not support her contention that the court’s award amounts to an award of sole legal custody with relevant legal authority and we find her contention to be without merit. See Rallo y. Rallo, 477 *241 S.W.3d 29, 36 (Mo. App. E.D. 2015) (court affirmed an identical joint custody .order wherein the trial court awarded the parties joint legal custody; ordered them to confer with one another regarding decisions about the children; and, in the event the parties could not agree, placed final decision-making authority with the wife).
Mother’s assertion the court’s award is unsupported by the evidence , is nothing more than a request for this Court to reweigh the evidence. Although Mother testified at trial that Father was a disinterested parent who had never been involved in making decisions for Child, the trial court was not obligated to believe Mother’s testimony. It is clear from the Judgment the court found significant portions of Mother’s testimony not credible, including her testimony regarding Father’s alleged lack of interest in co-parenting, and we defer to the trial court’s judgment on issues of credibility. See ¿atteree, 258 S.W.3d at 868 (appellate court defers to the trial court’s superior ability to judge the witnesses’ credibility and views the evidence in the light most favorable to the judgment, disregarding all contradictory evidence and inferences). Based on the foregoing, the trial court did not err in awarding the parties joint legal custody and vesting Father with final decision-making. Mother’s Point III is denied.
Point IV—Attorney’s Fees
Father testified he incurred approximately more than $8,000 in attorney’s fees and costs by the time of trial and requested the court award him attorney’s fees. Father testified he did not make enough income to hire his attorney and he had to refinance a vehicle and take out a loan in order to cover the costs of litigation. In the Judgment, the court ordered Mother to pay Father $4,000 toward his attorney’s fees. Mother contends the trial court abused its discretion in entering the award, because her attorney’s fees of $8,40(1 exceeded Father’s request and her income was less than 65% of Father’s income.-
The trial court has. broad discretion in awarding or denying attorney’s fees and'this Court will reverse the trial court’s determination only- upon an abuse of that discretion. .Hermann v. Heskett, 403 S.W.3d 136,143 (Mo. App. E.D. 2013). The trial court abuses -its discretion when the award-is .so arbitrary and unreasoqable and is against the logie of the- circumstances as to shock, the sense of justice and indicate a lack of careful -consideration. Id.
Generally, iñ'a domestic relations case, the parties are responsible for paying their own attorney’s fees. Hermann, 403 S.W.3d at 143; Section 210.842 RSMo 2000 allows the trial court to award attorney’s fees to a party in a paternity action. Section'452.355.1 RSMo 2000 provides: ■
... the court from time to time after considering all relevant factors including the financial resources of both parties, the merits of the case and the actions of the parties during the pendency of the action, may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding pursuant to sections 452.300 to 452.415 and for attorney’s fees...
See also Hermann, 403 S.W.3d at 143,
Here, the court did not make any specific findings as to why it was awarding Father a portion of his attorney’s fees. The evidence at trial, however, was Father provided financial support for Child and was an equal co-parent to Child throughout her life. After the parties broke up, Mother unilaterally made the decision to relocate with Child to Ralls County. At that point, the parties began an alternating week custody schedule, giving the parties equal *242 parenting time. When Child was 'with Father, he actively engaged in caring for and nurturing Child. The parties continued this arrangement for approximately a year before Mother attempted to coerce Father into agreeing to relinquish a significant amount of his custodial time by withholding custody and visitation from Father. Father’s repeated requests to see Child were all refused with the exception of one two-hour visit. In a text message exchange shortly after Mother informed Father that he would need to agree to the new custody arrangement in order to see Child, Father texted Mother pleading to see Child and Mother responded, “... Speak with an attorney, mine will be in touch.” Mother’s assertions at trial that Father was a disinterested parent, provided no financial support for Child, and threatened to keep Child from her were all explicitly or implicitly rejected by the trial court. Mother admitted at tidal she knowingly alienated Child from Father and, due to her actions, Child has never met her infant brother.
Based on the financial resources of the parties, the merits of the case, and the actions of the parties leading up to and during the pendency of the action, the trial court did not abuse its discretion in ordering Mother to pay Father $4,000 toward his attorney’s fees. Mother’s Point IV is denied.
Conclusion
The judgment of the trial court is affirmed as modified.
Robert G. Dowd, Jr., P.J., and Kurt S. Odenwald, J., concur.