

# In the Missouri Court of Appeals
# Eastern District

## DIVISION ONE

| | | |
|---|---|---|
| MATTHEW W. HAGEN, | ) | No. ED110935 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court of |
| | ) | St. Louis County |
| vs. | ) | |
| | ) | Honorable Joseph L. Green |
| JAMIE L. HARRIS, | ) | |
| | ) | |
| Appellant. | ) | Filed: November 21, 2023 |

## Introduction

Jamie Harris ("Mother") appeals the circuit court's finding of paternity and judgment for custody and child support of a child ("Child") she shares with Matthew Hagen ("Father"). Mother raises two points on appeal. In Point I, Mother alleges the circuit court erred in its Form 14 child support calculation of the presumed correct support amount ("PCSA"). In Point II, Mother alleges the circuit court erred in overruling her motion to reopen the case to consider additional evidence of charges related to Father driving while intoxicated ("DWI" and "alcohol-related charges") given his alleged alcohol use was a contested issue in the case.

Because the circuit court erred in calculating the PCSA, we grant Point I. Because the circuit court did not abuse its discretion in denying Mother's request to reopen the evidence and consider new evidence of Father's alcohol-related charges, we deny Point II.

The circuit court's judgment is affirmed in part, reversed in part, and the case remanded for the circuit court to recalculate Line 11 in the PCSA to match the circuit court's amended exchange schedules.

## Factual and Procedural Background

Mother and Father (collectively, "Parents") share a two-year-old child ("Child"). Father is listed as Child's father on her birth certificate and is her biological father according to both parties. On January 19, 2020, Parents were engaged in a domestic dispute at Father's house, and the police were called. On January 21, 2020, St. Charles County Circuit Court issued an adult ex parte order of protection against Mother and an ex parte child order of protection against Mother upon Father's request. On the same day, St. Louis County Circuit Court issued an adult ex parte order of protection against Father upon Mother's request. A day later, Mother obtained an ex parte child order of protection against Father. Father filed a petition for child custody and support on January 29, 2020. A guardian ad litem ("GAL") was appointed for Child.

Relevant to the points on appeal, Parents submitted proposed parenting plans and Form 14s. Mother's proposed Form 14 provided a Line 11 adjustment of 23% for 131–136 overnights with Father. Father's proposed Form 14 provided a Line 11 adjustment of 34% for 181–183 overnights. Mother's proposed Weekday and Weekend Exchange Schedule ("exchange schedule") provided Father with every Wednesday overnight and every other weekend beginning at 4:00 p.m. on Friday and ending at 4:00 p.m. on Monday. Father's exchange schedule proposed Father receive Child from 6:00 p.m. Friday through 6:00 p.m. Wednesday every other week and 6:00 p.m. Monday through 6:00 p.m. Wednesday every other week for a 50-50 split. The GAL also submitted a proposed parenting plan. The GAL's exchange schedule proposed Mother receive custody

2

beginning on Sunday in the first week, with Father receiving Wednesday overnight in the first week and every other weekend.

The circuit court held a trial on September 2, 2021. Father, Mother, Mother's boyfriend, and the GAL testified. Relevant to these points on appeal, Father testified he drinks alcohol two to three times a month and smokes a pack of cigarettes a day. Father denied drinking while exercising custody. Father testified he underwent alcohol monitoring and testing. Father testified there were no positive results from either program. Regarding the protection orders, Father testified Mother alleged he was drunk, he shoved her, and beat her while she was holding Child. Father denied these events happened. Father alleged Mother accused him of talking to other women, and as a result, he refused to let Mother take Child with her and she left without her. Father alleged Mother pushed and scratched him, but he did not contact the police at that time; instead he obtained the order of protection the next day.

Mother testified she believed Father to be a violent person, due to his anger outbursts, which usually occurred after his binge drinking. Mother testified Father's behavior worsened after Child was born. Mother testified Father drank every weekend, consuming a six- or thirty-pack of beer or "whatever else" was in the home. Mother testified Father would come home from work during the week, consume a six- or twelve-pack of beer, and then go to sleep. Mother acknowledged Father's court-ordered drug and alcohol tests were negative, although she believed there was a missing test result.

Regarding the protection orders, Mother testified Father drank a large bottle of alcohol while caring for Child, which upset Mother, causing an argument. Mother testified Father began to get physical, punched her multiple times, and pushed her to the ground while she was holding Child. Mother testified Father took Child from her, took Child into the bedroom, and locked the

3

door. Mother testified she left to not escalate the situation. Mother testified Father subsequently left, driving off through the front yard, and not telling her where he was taking Child. Mother testified she was pregnant at the time of this incident, but later miscarried. Mother testified she believed the miscarriage was caused by Father shoving her down.

On April 22, 2022, the circuit court, on its own motion, dismissed all orders of protection pending between Parents. On May 6, 2022, the circuit court entered its judgment awarding Father and Mother joint legal and physical custody of Child. The circuit court's judgment further ordered: Mother and Father to perform their duties as parents according to the parenting plan; Father to pay Mother $221.00 per month in child support; and Mother to prepare income withholding. The judgment awarded the GAL $7,880.00 in fees and awarded Mother to pay $5,000.00 toward Father's attorney's fees. The circuit court accepted Father's Form 14 calculations and did not rebut the PCSA as being unjust or inappropriate. The circuit court rejected Parents' exchange schedules and instead accepted the GAL's schedule "with a couple of exceptions." As to Father's alleged alcoholism and drug abuse, the circuit court determined:

> Mother not only alleged that Father was an alcoholic but also alleged that Father's entire family were alcoholics. Mother alleged that Father was intoxicated in the incident referenced above on January 19, 2020. The responding police officer's narrative in the police report stated "[Father] did not display any signs that he was impaired and I did not detect any signs of impairment."

> The documented evidence via Soberlink and drug tests, supports a finding that the current existing conditions are one in which Father does not suffer from alcohol/substance abuse.

> More importantly, there is absolutely no credible evidence presented that Father currently abuses alcohol or illicit drugs that would impair his ability to parent or impaired his ability to care for [Child]."

4

The circuit court further found, "Father does not suffer from any current substance abuse or addiction problems that would impair his ability to parent [Child] or inhibit his ability to care for [Child]."

On June 2, 2022, Mother moved to reopen the evidence because on or about January 9, 2022, Father was arrested for alcohol-related charges.[1] Mother also moved to amend the judgment asking the circuit court to correct alleged factual errors. The circuit court heard Mother's motion and then denied her motion to reopen the evidence and her motion to amend the judgment except for correcting Child's date of birth in the judgment (the "Amended Judgment").

This appeal follows.

## Discussion

### Point I: Form 14 Miscalculation

#### Party Positions

In Point I, Mother alleges the circuit court erred in its child support award in calculating the Form 14 PCSA.[2] Mother argues the circuit court's error is on Line 11, the custody credit. Mother further argues the circuit court erred when it "implicitly" determined it would not rebut the PCSA as unjust or inappropriate. Mother requests this Court to reverse the award of child support and remand the case for a new calculation.

#### Standard of Review

This Court will affirm the circuit court's judgment "unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law." *Schumert v. Dreyer*, 481 S.W.3d 885, 888 (Mo. App. E.D. 2016) (citing *Kamler v. Kamler*, 213 S.W.3d 185, 187 (Mo. App. E.D. 2007)); *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

---

[1] Father did not plead guilty to the DWI until February 8, 2023.
[2] Father filed no Respondent's brief with this Court.

5

*Analysis*

In determining child support, the circuit court must follow the two-step procedure in *Woolridge v. Woolridge*, 915 S.W.2d 372, 379 (Mo. App. W.D. 1996). "In determining the [PCSA] under the first step, the trial court can either accept one of the parties' Form 14 calculations or reject both parties' calculations and prepare its own Form 14 calculation." *Roberts v. Roberts*, 391 S.W.3d 921, 922 (Mo. App. W.D. 2013) (citing *Woolridge*, 915 S.W.2d at 381). In step two, the circuit court must "consider whether to rebut the [PCSA], as found by the court, as being unjust or inappropriate after consideration of all relevant factors." *Id.* at 922–23 (quoting *Woolridge*, 915 S.W.2d at 379).

Mother alleges the circuit court erred in its Line 11 credit determinations. Line 11 allows for adjustment for a portion of amounts expended by the parent obligated to pay child support during periods of overnight visitation or custody. In its directions for Line 11, "The Directions, Comments for Use, and Examples for Completion of Form No. 14," provide a table with corresponding percentages for the Line 11 credit.

Mother points out that under the circuit court's judgment, Father is awarded custody for January through May and September through December of each year. Mother argues "January through May is 151 days, and September through December is 122 days, totaling 273 days which is exactly 39 weeks." Mother states the custody schedule gives Father five overnights every two weeks, "so 39 weeks results in (39/2) *5 = 97.5 overnights, rounded to 98 overnights." Mother notes the circuit court's judgment flips the schedule for June, July, and August of each year. Mother states June, July, and August "is 92 days, which is exactly 13 weeks plus an extra day." But, Mother argues "the custody schedule gives each parent three uninterrupted weeks in the summer, so of that six-week period, Father receives 21 overnights and Mother receives 21

6

overnights." Mother determines the remaining period of summer, for which the flipped schedule applies, "comprise thirteen weeks minus six weeks, which is seven weeks." Mother contends the custody schedule gives Father "9 overnights every two weeks, so seven weeks results in (7/2) *9 = 31.5 overnights, rounded to 32 overnights." Thus, Mother argues "the custody schedule grants Father a total of 98 + 21 + 32 overnights = 151 overnights total." As to holidays, Mother states they "can be ignored because the parties evenly split the holidays, so the overall custody division remains essentially the same." With this total calculation, Mother concludes, applying the table in the Line 11 Directions and Comments, "151 overnights means that Father should receive a Line 11 custody credit of 28%" instead of the circuit court's award of 34% custody credit. Mother alleges "a 28% rather than a 34% Line 11 credit results in a Line 11 value of $279 ($996 from Line 5 times 0.28), which therefore increases the Form 14 amount from $211 to $271."

Based on the circuit court's exchange schedules attached to its judgment, it is unclear how the circuit court reached the number of overnights corresponding to 34% without error.[3] In its findings of fact and conclusions of law, the circuit court stated it "accepted Father's Form 14 calculations," instead of creating its own. But, as to visitation, the circuit court rejected both Parents' exchange schedules and instead accepted the GAL's schedule "with a couple of exceptions." In Father's original exchange schedule, Father proposed he "receive the child from 6 PM Friday through 6 PM Wednesday every other week and [sic] 6 PM Monday through 6 PM Wednesday and every other week for a 50-50 split." With approximately 365 days in a year, Father would receive approximately 182.5 overnights, falling into the 34% category on the table, as written in Father's proposed Form 14. Thus, it seems the circuit court accepted Father's Form 14,

---

[3] Mother incorrectly states "the custody schedule gives each parent three uninterrupted weeks in the summer . . . ." The circuit court's residential schedule instead gives each parent three weeks "each year during which they will have exclusive physical custody of the children and the regular or alternative exchange weekday and weekend schedules do not apply." There is no indication the designated vacation weeks must occur in the summer.

but did not update or recalculate Line 11 to match its amended exchange schedules. Thus, the circuit court erred in accepting Father's Form 14 as the correct PCSA without amending Line 11.[4] *See Schumert*, 481 S.W.3d at 890.

Point I is granted.

*Point II: Denial of Motion to Reopen Case*

*Party Positions*

In Point II, Mother argues the circuit court erred in overruling her motion to reopen the case to consider new evidence of Father's alcohol-related charges given his alleged alcohol use was a contested issue in the case. Mother argues she met the six-pronged test required to reopen this case based on the newly-discovered evidence. Thus, Mother argues the circuit court "abused its discretion in not reopening the case to address Father's" new alcohol- related charges. Mother asks this Court to reverse the judgment and remand the case to consider the new evidence on Father's alleged alcohol abuse.

*Standard of Review*

"A circuit court has wide discretion in deciding whether to grant a motion to reopen a case for the admission of additional evidence," and this Court "will not interfere with that decision unless we find an abuse of discretion." *Baker Team Props., LLC. v. Wenta*, 611 S.W.3d 348, 354 (Mo. App. W.D. 2020) (quoting *Union Elec. Co. v. A.P. Read Homes, LLC*, 485 S.W.3d 773, 778 (Mo. App. W.D. 2016)); Rule 78.01. "An abuse of discretion occurs when the trial court's decision is so against the logic of the circumstances then before it, or so unreasonable and arbitrary, that it

---

[4] Under Rule 84.14, this Court could correct the mathematical error in the Form 14 calculation without a remand. *See Elliott v. Elliott*, 920 S.W.2d 570, 579 (Mo. App. W.D. 1996). We decline to do so here because further "proceedings in the circuit court" are needed, as stated in the Directions, Comments for Use, and Examples for Completion of Form No. 14, to clarify the number of overnights each parent is "awarded to and exercised by" Father, "the parent obligated to pay support under" the circuit court's judgment. *Schumert*, 481 S.W.3d at 890 n.9 (quoting *DeBaliviere Place Ass'n v. Veal*, 337 S.W.3d 670, 679 (Mo. banc 2011)).

shocks one's sense of justice and indicates a lack of careful consideration." *State v. Whittier*, 591 S.W.3d 19, 23 (Mo. App. E.D. 2019) (citing *State v. Shegog*, 521 S.W.3d 628, 633 (Mo. App. W.D. 2017)).

*Analysis*

Rule 78.01 provides "[t]he court may grant a new trial of any issue upon good cause shown."[5] "On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact or make new findings, and direct the entry of a new judgment." *Id.*; *see also Baker Team Props., LLC*, 611 S.W.3d at 354. The party seeking a new trial based on newly discovered evidence must show:

> (1) that the evidence has come to [her] knowledge since the trial; (2) that the failure of the evidence to come to [her] knowledge sooner was not the result of a lack of due diligence; (3) that the evidence is so material that it would probably produce a different result if a new trial were granted; (4) that the evidence is not cumulative only; (5) that the parties' affidavit should be produced, or its absence be accounted for; and (6) that the object of the evidence is not merely to impeach the character or credibility of a witness.

*Pijanowski v. Pijanowski*, 272 S.W.3d 321, 324 (Mo. App. W.D. 2008) (quoting *Anderson v. Anderson*, 854 S.W.2d 32, 37–38 (Mo. App. W.D. 1993)). But, "new trial motions on the ground of newly discovered evidence 'are viewed with disfavor and courts grant them as an exception and refuse them as a rule.'" *Id.* 324–25 (quoting *Williams v. McCoy*, 854 S.W.2d 545, 554 (Mo. App. S.D. 1993)).

This Court finds no exception here. The circuit court called and heard Mother's motion and made the implicit determination the new evidence of Father's alcohol-related charges did not change its judgment as to Father "suffer[ing] from any current substance abuse or addiction problems that would impair his ability to parent [Child] or inhibit his ability to care for [Child]."

---

[5] All Rule references are to the Missouri Supreme Court Rules (2020), unless otherwise indicated.

Because Father's alcohol-related charges had not been adjudicated at the time of Mother's motion to reopen, this Court declines to hold the circuit court abused its discretion in finding the evidence was not "so material that it would probably produce a different result if a new trial were granted . . . ." *Pijanowski*, 272 S.W.3d at 324. Thus, the circuit court did not abuse its discretion in denying Mother's motion.

Point II denied.

## Conclusion

The circuit court's judgment is affirmed in part, reversed in part, and the case is remanded for the circuit court to recalculate Line 11 in the PCSA to match the circuit court's amended exchange schedules.

_____
Philip M. Hess, Judge

Robert M. Clayton III, P.J. and
Cristian M. Stevens, J. concur.